**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

RCC FABRICATORS, INC.           :
             Plaintiff    :
          v.           :      CIVIL ACTION
UMOJA ERECTORS, LLC        :
NORTH AMERICAN SPECIALTY  :      NO. 17-CV-05304-JS
    INSURANCE COMPANY    :
         Defendants  :
_____:

## <u>ORDER</u>

AND NOW, this ____ day of _____, 2019, upon consideration of Plaintiff

RCC Fabricators' Motion for Summary Judgment and Defendant North American Specialty

Insurance Company's response thereto, and finding that there are genuine issues of material fact,

it is hereby ORDERED that this Motion is DENIED.

BY THE COURT

_____
                             J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RCC FABRICATORS, INC. | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION |
| UMOJA ERECTORS, LLC | : | |
| NORTH AMERICAN SPECIALTY | : | NO. 17-CV-05304-JS |
| INSURANCE COMPANY | : | |
| Defendants | : | |
| | : | |

**DEFENDANT NORTH AMERICAN SPECIALTY INSURANCE COMPANY'S
RESPONSE TO PLAINTIFF RCC FABRICATOR, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant North American Specialty Insurance Company ("North American"), by its undersigned counsel, hereby opposes the motion for summary judgment filed by Plaintiff RCC Fabricators, Inc. There are genuine issues of material fact.

In opposition to this motion, North American relies upon and incorporates the accompanying memorandum of law, counter-statement of material facts and supporting documents and testimony. A proposed order is attached.

Oral argument is not requested on this motion.

Respectfully submitted,

**DEAN E. WEISGOLD, P.C.**

Dated: July 29, 2019

*s/ Leonard A. Windish*
**LEONARD A. WINDISH**
1835 Market Street, Suite 1215
Philadelphia, Pennsylvania 19103
Phone:       (215) 979-7605
Fax:          (215) 599-0322
lenwindish@verizon.net

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RCC FABRICATORS, INC. | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION |
| UMOJA ERECTORS, LLC | : | |
| NORTH AMERICAN SPECIALTY | : | NO. 17-CV-05304-JS |
| INSURANCE COMPANY | : | |
| Defendants | : | |
| | : | |

**DEFENDANT NORTH AMERICAN SPECIALTY INSURANCE COMPANY'S
MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF RCC FABRICATORS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## I.    <u>INTRODUCTION</u>

This lawsuit involves renovations to a building located at 46th Street and Market Street in Philadelphia that is owned by the City of Philadelphia.  D.A. Nolt, Inc. ("D.A. Nolt') was awarded a publicly-bid contract for building façade and roof improvements at the proposed Public Safety Services Campus located at 46th and Market Streets in Philadelphia (the "Project"). As required by this contract and by the Pennsylvania Public Works Contractors' Bond Law,  8 P.S. §§ 191-202, Defendant North American Specialty Insurance Company ("North American") provided a payment bond guaranteeing payment to D.A. Nolt's subcontractors and suppliers. The City of Philadelphia assigned the contract to the Philadelphia Municipal Authority (the "PMA") which operated as the owner of the Project.

D.A. Nolt subcontracted with Defendant Umoja Erectors, LLC ("Umoja") for a portion of this work at the Project, namely the procurement and erection of structural steel.  Umoja subcontracted with Plaintiff RCC Fabricators, Inc. ("RCC Fabricators") to supply the structural steel for this portion of the Project.  There were various issues that arose during Umoja's and RCC Fabricators' work at the Project that delayed the completion of their and D.A. Nolt's work

at the Project.  These delays caused all parties additional costs and expenses which have been documented during discovery in this case.

Unfortunately, the PMA refused to pay D.A. Nolt for its work at the Project, including that work performed by RCC Fabricators and Umoja, due to delays at the Project.  D.A. Nolt has sued the PMA for non-payment in this Court at No. 18-cv-4997, seeking damages of $2,564,329.37, including payment for the work performed by RCC Fabricators and Umoja.  The PMA has countersued D.A. Nolt for delay damages in the amount of $2,722,288.12.

RCC Fabricators' subcontract with Umoja incorporates Umoja's subcontract with D.A. Nolt.  These subcontracts contain "pay-if-paid" payment terms and dispute resolution terms binding the parties to the findings in the D.A. Nolt/PMA dispute.  Due to these terms, the PMA's failure to pay D.A. Nolt, the PMA's claims against D.A. Nolt, the delays caused by Umoja and RCC Fabricators, and the damages these delays have caused D.A. Nolt, this Court should deny RCC Fabricators' motion for summary judgment.

## II.    **STATEMENT OF FACTS**

### A.    **Parties and Relationships**

North American is a surety that offers payment and performance bonds to construction contractors.  The payment bonds guarantee payment to subcontractors and suppliers of the contractors.  Payment bonds are required on most public projects in Pennsylvania by the Pennsylvania Public Works Contractors' Bond Law,  8 P.S. §§ 191-202.

North American provided a payment bond to D.A. Nolt for a public construction contract that D.A. Nolt had been awarded in August of 2015 by the City of Philadelphia (the "Project").  The City of Philadelphia assigned the contract to the PMA which operated as the owner of the Project.

A portion of D.A.  Nolt's work on the Project was for the erection of roof frames, a penthouse structure, screen walls and miscellaneous steel components on the existing roof of an existing building.  D.A. Nolt subcontracted with Umoja for this work at the Project.  Umoja subcontracted with RCC Fabricators to supply the structural steel for this portion of the Project.

In this case, RCC Fabricators seeks payment from D.A. Nolt's surety, North American, for the steel it provided to the Project.

### B.    The Project - Schedule and Delays

D.A. Nolt's contract with the PMA required completion of the Project by December 16, 2016.  This contract contained a liquidated damages clause whereby D.A. Nolt would be charged $10,000 per day for not completing the Project by December 16, 2016.

In December of 2015, D.A. Nolt and Umoja agreed to a price for the erection of the steel components.  However, from January through May of 2016, the PMA issued bulletins which mandated changes to the Project which required changes to the D.A. Nolt-Umoja agreement.  On June 27, 2016, representatives of D.A. Nolt and Umoja met and agreed to the terms of a revised agreement which was sent to Umoja on June 30, 2016.  However, Umoja did not sign and return the subcontract to D.A. Nolt.  A steel pre-installation meeting was held on August 10, 2016.  Umoja began its work on the Project without a signed subcontract.  Additional terms were negotiated and a final subcontract was not signed until November of 2016.

Meanwhile, in May of 2016, D.A. Nolt contracted directly with RCC Fabricators for the production of shop drawings for the roof improvements at the Project which required approval of the PMA's engineer before any of the steel required for the roof improvements could be ordered and fabricated.  RCC Fabricators had told D.A. Nolt that the shop drawings would be complete in three or four weeks, by the week of June 6, 2016.   However, RCC Fabricators did not

3

produce drawings that would be approved by the PMA until September of 2016, more than three months late.

Once the shop drawings were finally approved by the PMA in September of 2016, Umoja subcontracted with RCC Fabricators for RCC Fabricators to provide the structural steel for the roof improvements. RCC Fabricators' subcontract with Umoja allowed for four to six weeks for delivery of all of the structural steel. At that time, RCC Fabricators confirmed that it would start to ship the structural steel to the Project during the week of September 19, 2016. However, RCC Fabricators did not deliver any steel to the Project until September 28, 2016, at which time only certain items were delivered to the Project.

In September and October, D.A. Nolt and Umoja continued to prompt RCC to provide the balance of the structural steel that it contracted to provide. RCC Fabricators was finally able to deliver more structural steel on November 11, 2016, a full month later than required by RCC Fabricators' contract. Much of the structural steel had to be remade and modified; issues involving the fabrication and modification of the steel provided by RCC Fabricators extended RCC Fabricators' delivery of steel into March of 2017, nearly five months late.

There were several other issues that delayed the completion of Umoja's and RCC Fabricators' work at the Project that were the sole responsibility of Umoja and/or RCC Fabricators. This further delayed D.A. Nolt's completion of the Project which included the installation and testing of a new roof system, which could not begin until Umoja's work was complete. D.A. Nolt completed its work at the Project in September of 2017. Final roof testing was completed and accepted in February of 2018.

### C.    <u>Delay Claim by the PMA</u>

Due to the delays stated above, the PMA stopped paying D.A. Nolt for its work on the Project in January of 2017.  The PMA claims that the late completion of the Project has caused it to suffer delay damages.  The PMA asserts that the delay in completion of the Project caused it to incur the following additional costs:

| | |
|---|---|
| Owner-occupied insurance | $924,439.00 |
| Additional architectural services | $75,000.00 |
| Additional construction management | $853,642.34 |
| Extended time for on-site safety inspector | $852,726.78 |
| Labor consultant/chair meetings | $14,080.00 |
| Additional Labor Management | <u>$2,400.00</u> |
| | $2,722,288.12. |

D.A. Nolt has sued the PMA in this Court for non-payment in the case captioned as *D.A. Nolt, Inc. v. The Philadelphia Municipal Authority, et al.*, case # 2:18-CV-04997 (the "PMA-D.A. Nolt case.")  D.A. Nolt seeks damages in the amount of $2,564,329.37.  The PMA has filed a Counterclaim seeking damages in the amount of $2,722,288.12.  The PMA-D.A. Nolt case has a Scheduling Order that indicates discovery is to be complete by July 15, 2019, and trial is anticipated in November, 2019.

D.A. Nolt's subcontract with Umoja contains a "pay-if-paid" payment provision, providing that payment from the PMA to D. A. Nolt for Umoja's "labor and materials is a condition precedent to payment" from D.A. Nolt to Umoja.  Therefore, to the extent that the PMA has not paid D. A. Nolt for Umoja's labor and materials, including those provided by RCC Fabricators, D.A. Nolt has no duty to make payment.

In addition, D.A. Nolt's contract with Umoja allows that D.A. Nolt "may deduct from amount due or to become due to [Umoja], on this Project any sum due or to become due to [D.A. Nolt] from [Umoja]." To the extent that the PMA is able to prove any of its delay damages, D.A. Nolt asserts that such damages arise from Umoja's (and RCC Fabricators') untimely completion of its work. D.A. Nolt intends to seek compensation from Umoja for any damages assessed against it in favor of the PMA.

The payment bond issued by North American to guarantee payment to D.A. Nolt's subcontractors and suppliers incorporates D.A. Nolt's subcontract with Umoja. In addition, the payment bond provides that North American's obligation will be "null and void" if D.A. Nolt makes payment to claimants, directly or indirectly, for all sums due. As stated above, D.A. Nolt has made payment to Umoja for all sums due under its subcontract with Umoja. Therefore, currently, North American has no liability to RCC. This may change if D.A. Nolt is successful in its case against the PMA.

The contract documents also provide for Umoja and RCC Fabricators to be bound by any findings in any dispute between D.A. Nolt and the PMA:

> **In the event of any dispute between [D.A. Nolt] and [the PMA] which involves the work required to be performed by [Umoja]** under this Subcontract, or in the event of any dispute between [D.A. Nolt] and [Umoja] which involves a claim against the [PMA] for either additional compensation and/or an extension of time under the Contract Documents**, [Umoja] agrees to be bound to [D.A. Nolt] and [D.A. Nolt] agrees to be bound to [Umoja] to the same extend that [D.A. Nolt] is bound to the [PMA]** by the terms of the Contract Documents and **by all decisions or findings made** thereunder by the persons so authorized in the Contract Documents, or **by an administrative agency or court of competent jurisdiction**, whether or not [Umoja] is a party to the proceeding before said person, agency or court.

Exhibit F, paragraph 19.1.1 (emphasis added).  Therefore, Umoja, and its subcontractor RCC Fabricators, are bound by any decision in the PMA - D.A. Nolt case.

## III.     STATEMENT OF QUESTION INVOLVED

Should this Court deny RCC Fabricators' motion for summary judgment where:

1.      North American is entitled to all the defenses of its principal, D.A. Nolt;

2.      The applicable contract documents make payments due to RCC Fabricators contingent upon D.A. Nolt's receipt of payment from the PMA;

3.      The PMA has not paid D.A. Nolt for all of the labor and materials provided by Umoja and RCC Fabricators;

4.      D.A. Nolt has paid Umoja the full amount, and maybe more, that D.A. Nolt has received from the PMA for the labor and materials provided by Umoja and RCC Fabricators at the Project;

5.      The applicable contract documents allow D.A. Nolt to withhold payment from Umoja (and RCC Fabricators) where delays caused by these parties cause D.A. Nolt financial damages;

6.      The applicable contract documents allow D.A. Nolt to withhold payment from Umoja (and RCC Fabricators) for claims made by the PMA against D.A. Nolt;

7.      D.A. Nolt and the PMA are currently in litigation over payment and delay damages issues in this Court; and

8.      The applicable contract document show that Umoja and RCC Fabricators agreed to be bound by any findings in disputes between D.A. Nolt and the PMA?

**Suggested Answer:**   Yes.

## IV.   <u>ARGUMENT</u>

### A.   <u>Legal Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. CIV P 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the initial burden of identifying those portions of the record that it believes illustrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party makes such a demonstration, the burden then shifts to the nonmovant, who must offer evidence that establishes a genuine issue of material fact that should proceed to trial. *Id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### B.   <u>North American Can Assert the Defenses of its Principal</u>

It is well-established under Pennsylvania law that the liability of a surety is no greater than that of the surety's principal, and that a surety may assert any defense of which its principal could take advantage. *See Exton Drive-In, Inc. v. Home Indem. Co.*, 436 Pa. 480, 261 A.2d

319, 325 (Pa. 1969); *Gen. Equip. Mfrs. v. Westfield Ins. Co.*, 430 Pa. Super. 526, 635 A.2d 173,

180 (Pa. Super. Ct. 1993); *Superior Precast, Inc. v. Safeco Ins. Co. of America*, 71 F. Supp. 2d

438, 452 (E.D. Pa. 1999) ("Under Pennsylvania law, it is axiomatic that the liability of a surety is

not greater than that of a principal."); *Glass Artistry Arch. Glass & Metal v. Western Surety Co.*,

2010 U.S. Dist. LEXIS 7477 at *14-15, 2010 WL 331701 (E.D. Pa. Jan. 27, 2010); *Sloan & Co.*

*v. Liberty Mutual Ins. Co.*, 2008 U.S. LEXIS 62384 at *8, 2008 WL 3732519 (E.D. Pa  August

15, 2008).

Sureties such as North American are entitled to the defenses of their principals. *American*

*Bonding Co. v. United States*, 233 F. 364, 369 (3d Cir. 1916); *Ford Motor Credit Co. v. Lototsky*,

549 F.Supp. 996 (E.D.Pa. 1982); *see also* 10 S. Williston, *Contracts* 214.   Therefore, in this

case, North American has all of D. A. Nolt's defenses, including non-payment by the PMA and

delay damages, available to it.

In this case, D.A. Nolt has numerous defenses to claims of non-payment to its

subcontractor Umoja and its subcontractor, RCC Fabricators.   These include both contractual

and factual defenses:

1.      Pay-if-paid payment terms;

2.      North American has no obligation to RCC Fabricators where D.A. Nolt owes

nothing to Umoja;

3.      The PMA has asserted claims and is seeking to recover money from D.A. Nolt for

issues involving the work of Umoja and RCC Fabricators;

4.      Issues with the labor and materials provided by Umoja and RCC Fabricators

concerning delays on the Project have caused D.A. Nolt to incur costs in excess of RCC

Fabricators' claim.

RCC Fabricators' motion for summary judgment completely ignores these issues and North American's ability to assert these defenses.  RCC Fabricators asserts that it is entitled to summary judgment for all of the sums it alleges is due merely because it sold materials to Umoja, the materials were used in the Project and it has not been paid in full.  RCC Fabricators requests judgment in the amount of $209,805.00 without regard for the applicable agreements between the parties and without regard for the damage RCC Fabricators caused to Umoja, D.A. Nolt and the PMA.  RCC Fabricators seems to believe that the responsibility for verifying field dimensions should be dispositive of this case.  However, the contract documents govern how and when payments are be made by and among the parties.

### C.    The "Pay-if-Paid" Provisions in the Parties' Agreements Preclude Recovery of Plaintiff's Claim

The subcontract between Umoja and RCC incorporated the terms of Umoja's contract with D.A. Nolt.

> Subcontractor further agrees. to be bound to Umoja by each and all of the terms of the Prime Subcontract between Nolt and  Umoja with respect to Subcontractor's work, and to assume toward Umoja all duties and obligations Umoja owes the general contractor Nolt under the Prune Subcontract with respect to the Subcontractor's work, and Umoja shall have the same rights and remedies against Subcontractor as Nolt has against Umoja under said Prime Subcontract with respect to the Subcontractor's work, with the same force and effect as though every such duty, obligation, right or remedy were set forth herein at length.

Exhibit G.  Section 4.1.2 of Umoja's contract with D.A. Nolt makes D.A. Nolt's receipt of payment from the PMA a condition precedent to D.A. Nolt's duty to pay Umoja:

> Subcontractor recognizes that **payment from the owner to the Contractor for the Subcontractor's labor and materials is a condition precedent to payment from the Contractor to the Subcontractor**.  By entering into the Subcontract, Subcontractor agrees to bear the risk of non-payment by the Owner.

Exhibit F (emphasis added).  Section 5.3 of that contract echoes this "pay if paid" requirement:

> Subcontractor recognizes that final **payment from the owner to the Contractor for the Subcontractor's labor and materials is a condition precedent to payment from the Contractor to the Subcontractor**.  By entering into the Subcontract, Subcontractor agrees to bear the risk of non-payment by the Owner.

Exhibit F (emphasis added).  RCC Fabricators' subcontract with Umoja also contains a "pay if paid" payment term:

> Based upon itemized invoices received from Subcontractor, Umoja agrees to make progress payment to Subcontractor.  Each progress payment shall be in an amount equal to that portion of the Subcontract amount property allocable to completed Subcontractor work.  **Contingent upon payment by Nolt** progress payments, final payments and retainage shall be due and payable to Subcontractor within seven (7) calendar days from the date of Umoja payment received by Nolt.

Exhibit G, page 2 (emphasis added).

Parties to a construction contract may use enforceable "pay if paid" clauses to "shift the risk of the owner's nonpayment under a subcontract from the contactor to the subcontractor." *Sloan & Co. v. Liberty Mutual Ins. Co.,* 653 F.3d 175, 184 (3d Cir. 2011).  "Pennsylvania law recognizes that pay-if-paid clauses present a condition precedent to payment." *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 730 F. Supp. 2d 401, 421 (E.D. Pa. 2010). The law imposes on parties to such a clause "an implied duty not to frustrate conditions precedent to their performance." *Id.* As the Supreme Court of Pennsylvania has stated, "if a promisor is himself the cause of the failure of performance . . . of a condition upon which his own liability depends, he cannot take advantage of the failure." *Howley v. Scranton Life Ins. Co.*, 357 Pa. 243, 53 A.2d 613, 616 (Pa. 1947).

Sureties can assert "pay-if-paid" language in their principals' subcontracts as a defense to subcontractor claims. *Sloan & Co., supra; Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.*, 2018 U.S. Dist. LEXIS 123009 (E.D.Pa. 2018); *Glass Artistry Architectural Glass &*

*Metal v. Western Surety Co.*, 2010 U.S. LEXIS 7477 (E.D.Pa. 2010).  In *Sloan & Co.*, the Third

Circuit determined that the combination of the "pay-if-paid" language, modifications and

liquidating provisions resulted in the agreement that a subcontractor's claim against a surety

would be limited to what the surety's principal/general contractor could collect on its claim

against the project owner. *Sloan & Co., id. at* 181-83.  Likewise, in *Glass Artistry*, this Court

determined that a subcontractor's claim for payment against a surety was limited to what the

surety's principal/general contractor could recover from the project owner. *Glass Artistry, id. at*

*32.

     The "pay-if-paid" clause in the subcontract between D.A. Nolt and Umoja expressly

conditions D.A. Nolt's duty to pay Umoja on D.A. Nolt's receipt of those funds from the PMA.

Thus, Umoja agreed that the risk that the PMA would not pay was transferred from D.A. Nolt to

Umoja.  Likewise, RCC Fabricators agreed to this express condition in its subcontract with

Umoja through the section quoted above and the incorporation clause contained in its

subcontract with Umoja.

     The evidence in this case shows that D.A. Nolt has not been paid in full by the PMA for

the steel work at the Project. Exhibit H, deposition of Richard O'Brien, p. 70.  D.A. Nolt has not

been paid in full for the materials provided by RCC Fabricators at the Project. Exhibit H, pp. 70-

71.  The PMA has not made any payments to D.A. Nolt since January 2017. Exhibit H, p. 73.

D.A. Nolt has paid Umoja the full amount, and maybe more, that D.A. Nolt has received from

the PMA for the labor and materials provided by Umoja and RCC Fabricators at the Project.

Exhibit H, p. 74-75.  In addition, D.A. Nolt's Payment History shows that it has disbursed all of

the payments it received from the PMA for labor and materials provided by Umoja and RCC at

the Project. Exhibit I, Payment History; Exhibit H, pp.45-46.

RCC Fabricators' motion for summary judgment completely avoids and fails to address the clear and unambiguous "pay-if-paid" provisions cited above.  RCC Fabricators freely and without reservation entered into its subcontract with Umoja that contains a "pay-if-paid" clause and that incorporates the "pay-if-paid" clause in the subcontract between Umoja and D.A. Nolt. Now, ignoring this "pay-if-paid" language, RCC Fabricators seeks to avoid the impact this language has on its claims against North American.   This cannot be allowed.  RCC Fabricators must be held accountable for its decision to sign its subcontract with Umoja.

The applicable payment terms show that payment from the PMA is a condition precedent to D.A. Nolt's and thus North Americans' payment obligations.  The evidence in this case shows that the PMA has not paid D.A. Nolt for the materials provided by RCC Fabricators.  Therefore, North American has a valid defense to RCC Fabricators' claim for non-payment.  Accordingly, the motion for summary judgment should be denied.

### D.     RCC Fabricators Cannot Collect on its Claim as there is Nothing Due to Umoja from D.A. Nolt

North American's payment bond provides that North American shall have no liability provided that D.A. Nolt makes payment for all sums due:

> With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

Exhibit C.  RCC Fabricators' motion completely ignores this language that negates North American's obligation to RCC Fabricators should D.A. Nolt make payment for all sums due.

Section 4.5 of Umoja's subcontract with D.A. Nolt negates D.A. Nolt's obligation to pay Umoja upon delays to the Project

> Contractor shall not be obligated to make payments to Subcontractor under this Subcontract whenever the Contractor, in

his sole discretion, shall determine that the Project is being or is in
danger of being delayed by the Subcontractor.

Exhibit F, Section 4.5c.  Section 16.1.1 of Umoja's subcontract with D.A. Nolt provides "Time is

of the essence." Exhibit F.  Section 16.4.1 of Umoja's contract with D.A. Nolt provides for

withholding of payment from Umoja upon the PMA's claims of damages related to delays to the

Project:

> In the event of any failure of Subcontractor to complete his work
> within the required time, the Subcontractor hereby agrees to
> reimburse the Contractor for any and all <u>actual and/or</u> liquidated
> damages that may be assessed against the Contractor by the
> Owner, which are directly or indirectly attributable to work caused
> by the Subcontractor's failure to comply fully with the foregoing
> provision.

Exhibit F (emphasis in original).  Section 16.4.2 of Umoja's subcontract with D.A. Nolt provides

for Umoja to compensate D.A. Nolt for any damages D.A. Nolt sustains due to delays caused by

Umoja:

> Subcontractor also agrees to pay to the Contractor such damages as
> the Contactor may sustain by reason of any delay, directly or
> indirectly, attributable to or caused by the Subcontractor.

Exhibit F.  Section 4.3 of Umoja's subcontract with D.A. Nolt allows the withholding of

payment for claims made by the PMA

> The Contractor may deduct from amounts due or to become due to
> the Subcontractor on this Project any sums due or to become due to
> Contractor from the Subcontractor.

Exhibit F.

The evidence in this case shows that D.A. Nolt has made payment for all sums due.  D.A.

Nolt has disbursed or placed into escrow all funds received from the PMA.  There are no sums

due to Umoja from D.A. Nolt at this time.  Therefore, North American's obligation under the

Payment Bond is null and void.

14

The evidence in this case also shows that the Project was delayed by Umoja and RCC Fabricators.  RCC Fabricators' contract with Umoja, dated August 2, 2016, provided that the delivery of RCC Fabricators' structural steel was to be delivered "4-6 weeks from Receipt of Approved Shop Drawings." Exhibit G, Exhibit A, RCC Fabricators' bid.  RCC Fabricators' initial shop drawings were provided June 27, 2016. Exhibit M, Shop Drawings.  RCC Fabricators began delivering its structural steel to the Project on September 28, 2016. Exhibit N, RCC Fabricators' Bills of Lading.  RCC Fabricators delivered the last of its structural steel to the Project on February 22, 2017, more than three months after the Project completion date. Exhibit N.  In addition, Umoja has identified several pieces of steel that RCC Fabricators had fabricated incorrectly and had to be re-fabricated, further delaying the Project. Exhibit P, Umoja's Supplemental Answers to Interrogatories.  D.A. Nolt's work was delayed by the late delivery of RCC Fabricators' steel as D.A. Nolt could not complete its roof work without the structural steel. Exhibit O, Deposition of Scott Vesper, pp. 126-27.  D.A. Nolt repeatedly advised RCC Fabricators' of the delays RCC Fabricators was causing. Exhibit O, p. 123-24.; Exhibit Q, Deposition of Jeff Smilek, pp. 89-90, 128; Exhibit R, sample project correspondence.

D.A. Nolt has clearly demonstrated that Umoja and RCC Fabricators delayed the Project. Pursuant to section 4.5 of its subcontract with Umoja cited above, D.A. Nolt is justified in withholding any monies that may have become due to Umoja and RCC Fabricators.

The PMA, owner of the Project, stopped paying D.A. Nolt's invoices in January, 2017 and has alleged and is prosecuting a claim for damages against D.A. Nolt for delay damages on the Project, including those related to Umoja's and RCC Fabricators' work.  D.A. Nolt has sued the PMA is this Court for non-payment on the Project. Exhibit J, D.A. Nolt's Complaint in the PMA – D.A. Nolt case.  The PMA has filed a Counterclaim including claims for actual and

liquidated damages for delays on the Project, citing the Project completion date of December 16, 2016. Exhibit K, PMA's Answer and Counterclaim.  The PMA – D.A. Nolt is currently scheduled to go to trial in November of 2019.  Exhibit L, Scheduling Order.

D.A. Nolt is clearly authorized by Sections 16.4.1 and 16.4.2 of its contract with Umoja to offset Umoja's and RCC Fabricators' claims for non-payment with the damages assessed by the PMA and those sought to be collected by the PMA.  Therefore, there is no amount due to Umoja from D.A. Nolt or to RCC Fabricators from North American.

The evidence in this case also shows that D.A. Nolt suffered great financial damage due to the delays caused by Umoja and RCC Fabricators.  D.A. Nolt has produced documentation of all of these damages in this litigation. Exhibits S and T.  These backcharges include the following:

- Overcharges on Umoja Invoices $97,654.86
- All Costs Associated with Steel RFIs $23,200.00
- Additional Engineering Services $19,892.50
- Damage to Roof $522,197.60
- Extended General Conditions $488,422.96
- Equipment Charged but Not Returned $5,517.10
- Rejected Umoja Invoices – Rework labor <u>$238,486.23</u>

TOTAL $1,395,371.25

D.A. Nolt is clearly authorized by Section 4.3 of its contract with Umoja to offset Umoja and RCC Fabricators' claims for non-payment with the damages D.A. Nolt suffered as a result of these parties' delays.  North American, as D.A. Nolt's surety, is entitled to this setoff as a defense to RCC Fabricators' claim of nonpayment.

RCC Fabricators asserts that it is entitled to summary judgment for all of the sums it alleges is due merely because it sold materials to Umoja, the materials were used in the Project and it has not been paid in full.  However, RCC Fabricators fails to support its contention that North American is bound to pay whatever Umoja, D.A. Nolt and the PMA failed to pay despite the risk-shifting provisions in the applicable contract documents that North American is entitled to assert.  RCC Fabricators' argument misconstrues the concept of suretyship.  A construction bond only assumes the fulfillment of the principal's obligations identified in the principal's contract.  A construction bond is **not** an insurance policy.  Here, D.A. Nolt's obligation to pay Umoja is to pay Umoja what it receives from the PMA for Umoja's (and RCC Fabricators') work, less any delay damages caused by Umoja and less any claims by the PMA against D.A. Nolt directly or indirectly attributable to Umoja's (and RCC Fabricators') work.  Therefore, North American's obligation under its payment bond is to pay Umoja and RCC Fabricators what D.A. Nolt receives from the PMA, less any delay damages claimed by D.A. Nolt and by the PMA.  As shown above and in the Counterstatement of Material Facts, this obligation has been met.  All of these facts show that no payment is currently due from D.A. Nolt to Umoja. Therefore, North American has no obligation to RCC Fabricators.  Accordingly, the motion for summary judgment should be denied.

**V.**     <u>**CONCLUSION**</u>

For all of the above reasons, Defendant North American Specialty Insurance Company requests that this Honorable Court deny Plaintiff RCC Fabricators, Inc.'s motion for summary judgment.

Respectfully submitted,

**DEAN E. WEISGOLD, P.C.**

Dated:  July 29, 2019                 *s/ Leonard A. Windish*
                                      **LEONARD A. WINDISH**
                                      1835 Market Street, Suite 1215
                                      Philadelphia, Pennsylvania 19103
                                      Phone:       (215) 979-7605
                                        Fax:         (215) 599-0322
                                        lenwindish@verizon.net

18

## <u>CERTIFICATE OF SERVICE</u>

I, Leonard A. Windish hereby certify that a true and correct copy of the foregoing

Response to Motion for Summary Judgment was served upon the following on July 29, 2019:


Patrick J. Hughes, Esquire
Connell Foley LLP
457 Haddonfield Road
Suite 230
Cherry Hill, NJ 08002

Tsiwen M. Law, Esquire
Law & Associates, LLC
1617 John F. Kennedy Blvd
Suite 1055
Philadelphia, Pa 19103

**DEAN E. WEISGOLD, P.C.**


*s/ Leonard A. Windish*
**LEONARD A. WINDISH**
1835 Market Street, Suite 1215
Philadelphia, Pennsylvania 19103
Phone:        (215) 979-7605
Fax:           (215) 599-0322
lenwindish@verizon.net