## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RCC FABRICATORS, INC. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| UMOJA ERECTORS, LLC | : | No. 17-5304-TR |
| NORTH AMERICAN SPECIALTY | : | |
| INSURANCE COMPANY | : | |
| Defendants | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2021, upon consideration of the Motion

to Stay Proceedings filed by Defendant North American Specialty Insurance Company, and any

response thereto, it is hereby ORDERED that this Motion is GRANTED.   This matter is

STAYED pending a resolution of the case in this Court captioned as D.A. Nolt, Inc. v. The

Philadelphia Municipal Authority, et al., civil action number 18-4997.   Upon such resolution,

counsel shall advise the Court and this matter will be set for a Status Conference.


BY THE COURT:


_____
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RCC FABRICATORS, INC. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| UMOJA ERECTORS, LLC | : | No. 17-0304-TR |
| NORTH AMERICAN SPECIALTY | : | |
| INSURANCE COMPANY | : | |
| Defendants | : | |
| | : | |

## DEFENDANT NORTH AMERICAN SPECIALTY INSURANCE COMPANY'S MOTION TO STAY PROCEEDINGS PENDING <u>RESOLUTION OF CASE NO. 18-cv-04997</u>

Defendant North American Specialty Insurance Company ("North American"), by its undersigned counsel, moves for an order staying the proceedings and trial in this matter pending resolution of the ongoing dispute between North American's principal, D.A. Nolt, Inc., and the Philadelphia Municipal Authority which involves the work of Defendant Umoja Erectors, LLC, and Plaintiff RCC Fabricators, Inc. at the construction project which is the subject of this case. In support of this motion, North American relies upon and incorporates the supporting Brief in Support of Motion to Stay Proceedings.

Respectfully submitted,

**DEAN E. WEISGOLD, P.C.**

Dated: February 19, 2021

*s/ Dean E. Weisgold*
**DEAN E. WEISGOLD**
1835 Market Street, Suite 1215
Philadelphia, Pennsylvania 19103
Phone:          (215) 979-7602
Pennsylvania state ID No.  52927

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RCC FABRICATORS, INC. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| UMOJA ERECTORS, LLC | : | No. 17-5304-TR |
| NORTH AMERICAN SPECIALTY | : | |
| INSURANCE COMPANY | : | |
| Defendants | : | |
| | : | |

**DEFENDANT NORTH AMERICAN SPECIALTY INSURANCE COMPANY'S**
**BRIEF IN SUPPORT OF MOTION TO STAY**

I.      **INTRODUCTION**

This lawsuit involves renovations to a building located at 46th Street and Market Street in Philadelphia that is owned by the City of Philadelphia.  D.A. Nolt, Inc. ("D.A. Nolt') was awarded a publicly bid contract for building façade and roof improvements at the proposed Public Safety Services Campus located at 46th and Market Streets in Philadelphia (the "Project"). As required by this contract and by the Pennsylvania Public Works Contractors' Bond Law,  8 P.S. §§ 191-202, Defendant North American Specialty Insurance Company ("North American") provided a payment bond guaranteeing payment to D.A. Nolt's subcontractors and suppliers. The City of Philadelphia assigned the contract to the Philadelphia Municipal Authority (the "PMA") which operated as the owner of the construction project.

Unfortunately, the PMA refused to pay D.A. Nolt for its work at the Project, including that work performed by Plaintiff RCC Fabricators, Inc. ("RCC") and by defendant Umoja Erectors, LLC ("Umoja") due to delays at the Project.  D.A. Nolt has sued the PMA for non-payment in this Court at civil action number 18- 4997, seeking damages of $2,519,757.05, including payment for the work performed by RCC and Umoja.  The PMA has countersued D.A. Nolt for delay damages in the amount of $1,310,424.17.

RCC"'s subcontract with Umoja incorporates Umoja's subcontract with D.A. Nolt. These subcontracts contain "pay-if-paid" payment terms and dispute resolution terms binding the parties to the findings in the D.A. Nolt/PMA dispute. Due to these terms and in order to avoid the re-litigation of issues and the possibility of inconsistent verdicts, this case should be stayed pending resolution of the case between D.A. Nolt and the PMA.

## II.   STATEMENT OF FACTS

### A.   Parties and Relationships

North American is a surety that offers payment and performance bonds to construction contractors. The payment bonds guarantee payment to subcontractors and suppliers of the contractors. Payment bonds are required on most public projects in Pennsylvania by the Pennsylvania Public Works Contractors' Bond Law, 8 P.S. §§ 191-202.

North American provided a payment bond to D.A. Nolt for a public construction contract that Nolt had been awarded in August of 2015 by the City of Philadelphia[1]. The City of Philadelphia assigned the contract to the PMA which operated as the owner of the Project.

A part of D.A. Nolt's work on the Project was for the erection of roof frames, a penthouse structure, screen walls and miscellaneous steel components on the existing roof of an existing building. D.A. Nolt subcontracted with Umoja for this work at the Project.[2] Umoja subcontracted with RCC to supply the structural steel for this portion of the Project.[3]

In this case, RCC seeks payment from D.A. Nolt's surety, North American, for the steel it provided to the Project.

---

[1] A copy of the payment bond at issue in this case is attached hereto as Exhibit 1.
[2] A copy of the D.A. Nolt/Umoja subcontract is attached hereto as Exhibit 2.
[3] A copy of the Umoja/RCC subcontract is attached hereto as Exhibit 3.

**B.      The Project - Schedule and Delays**

D.A. Nolt's contract with the PMA required completion of the Project by December 16, 2016. This contract contained a liquidated damages clause whereby D.A. Nolt would be charged $10,000 per day for not completing the Project by December 16, 2016.

In December of 2015, D.A. Nolt and Umoja agreed to a price for the erection of the steel components. However, from January through May of 2016, the PMA issued bulletins which mandated changes to the Project which required changes to the D.A. Nolt-Umoja agreement. On June 27, 2016, representatives of D.A. Nolt and Umoja met and agreed to the terms of a revised agreement which was sent to Umoja on June 30, 2016. However, Umoja did not sign and return the subcontract to D.A. Nolt. A steel pre-installation meeting was held on August 10, 2016. Umoja began its work on the Project without a signed subcontract. Additional terms were negotiated, and a final subcontract was not signed until November of 2016.

Meanwhile, in May of 2016, D.A. Nolt contracted directly with RCC for the production of shop drawings for the roof improvements at the Project which required approval of the PMA's engineer before any of the steel required for the roof improvements could be ordered and fabricated. RCC was supposed to have the shop drawing completed by June 2, 2016. However, RCC did not produce approved drawings until September of 2016, more than three months late.

Umoja subcontracted with RCC for RCC to provide the structural steel for the roof improvements. RCC's subcontract with Umoja allowed for four to six weeks for delivery of all of the structural steel. At that time, RCC confirmed that it would start to ship the structural steel to the Project during the week of September 19, 2016. However, RCC did not deliver any steel to the Project until September 28, 2016, at which time only certain items were delivered to the Project.

In September and October, D.A. Nolt and Umoja continued to prompt RCC to provide the balance of the structural steel that it contracted to provide. RCC was finally able to deliver more structural steel in November 2016, a full month later than required by RCC's contract. Much of the structural steel had to be remade and modified; issues involving the fabrication and modification of the steel provided by RCC extended RCC's delivery of steel into March of 2017, nearly five months late.

There were several other issues that delayed the completion of Umoja's and RCC's work at the Project that were the sole responsibility of Umoja and/or RCC. This further delayed D.A. Nolt's completion of the Project which included the installation and testing of a new roof system which could not be completed until Umoja's work was complete. D.A. Nolt completed its work at the Project in September of 2017. Final roof testing was completed and accepted in February of 2018.

### C.     Delay Claim by the PMA

Due to the delays above, the PMA stopped paying D.A. Nolt on the Project in February of 2017. The PMA claims that the late completion of the Project has caused it to suffer delay damages. The PMA asserts that the delay in completion caused it to incur the following additional costs:

| | |
|---|---|
| Owner-occupied insurance | $471,252.48 |
| Additional architectural services | $67,523.75 |
| Additional construction management | $709,182.83 |
| Electricity | $866.29 |
| Labor consultant/chair meetings | $14,080.00 |
| Direct Energy Business | $45,118.82 |

| Additional Labor Management | $2,400.00 |
|---|---|
| | $1,310,424.17. |

D.A. Nolt has sued the PMA in this court for non-payment in the case captioned as D.A. Nolt, Inc. v. The Philadelphia Municipal Authority, et al., civil case number 18-4997.[4] D.A. Nolt seeks damages in the amount of $2,519,757.05.[5] The PMA has filed a Counterclaim seeking payment of the $1,310,424.17 in additional costs.[6] The D.A. Nolt/PMA case has been scheduled for trial in early June 2021, less than four months from now and less than two months from the time this case is schedule for trial.[7]

Under Pennsylvania law, sureties such as North American, are entitled to the defenses of their principals. *American Bonding Co. v. United States*, 233 F. 364, 369 (3d Cir. 1916); *Ford Motor Credit Co. v. Lototsky*, 549 F.Supp. 996 (E.D.Pa. 1982); *see also* 10 S. Williston, *Contracts* 214.   Therefore, in this case, North American has all of D.A. Nolt's defenses, including non-payment by the PMA and delay damages, available to it.

D.A. Nolt's contract with Umoja[8] contains a "pay-if-paid" payment provision, providing that payment from the PMA to D.A. Nolt for Umoja's "labor and materials is a condition precedent to payment" from D.A. Nolt to Umoja.[9] Therefore, to the extent that the PMA has not paid D.A. Nolt for Umoja's labor and materials, including those provided by RCC, D.A. Nolt has no duty to make payment.

In addition, D.A. Nolt's contract with Umoja allows that D.A. Nolt "may deduct from amount due or to become due to [Umoja], on this Project any sum due or to become due to [D.A.

---

[4] A copy of D.A. Nolt's Complaint is attached hereto as Exhibit 4.
[5] See Exhibit 4, Count I, III and IV.  This is the current amount.
[6] A copy of the PMA's Answer and Counterclaim are attached hereto as Exhibit 5.
[7] Correspondence dated February 16, 2021 confirming the trial dates in the D.A. Nolt/PMA case is attached hereto as Exhibit 6.
[8] Nolt's contract with Umoja is effectively incorporated into RCC's subcontract with Umoja. *See* Exhibit 3, page 1, Contract Documents.
[9] *See* Exhibit 2 at Article 4.1.2.

5

Nolt] from [Umoja]."[10]   To the extent that the PMA is able to prove any of its delay damages, D.A. Nolt asserts that such damages arise from Umoja's (and RCC's) untimely completion of its work. D.A. Nolt intends to seek compensation from Umoja for any damages assessed against it in favor of the PMA.

The payment bond issued by North American to guarantee payment to D.A. Nolt's subcontractors and suppliers incorporates D.A. Nolt's subcontract with Umoja.[11]   In addition, the payment bond provides that North American's obligation will be "null and void" if D.A. Nolt makes payment to claimants, directly or indirectly, for all sums due.[12]

The contract documents also provide for Umoja and RCC to be bound by any findings in any dispute between D.A. Nolt and the PMA:

> **In the event of any dispute between [D.A. Nolt] and [the PMA] which involves the work required to be performed by [Umoja]** under this Subcontract, or in the event of any dispute between [D.A. Nolt] and [Umoja] which involves a claim against the [PMA] for either additional compensation and/or an extension of time under the Contract Documents, **[Umoja] agrees to be bound to [D.A. Nolt] and [D.A. Nolt] agrees to be bound to [Umoja] to the same extend that [D.A. Nolt] is bound to the [PMA]** by the terms of the Contract Documents and **by all decisions or findings made** thereunder by the persons so authorized in the Contract Documents, or **by an administrative agency or court of competent jurisdiction**, whether or not [Umoja] is a party to the proceeding before said person, agency or court.[13]

Therefore, Umoja, and its subcontractor RCC, are bound by any decision in the case between D.A. Nolt and the PMA.

The trial of the D.A. Nolt/PMA case was scheduled for trial to commence on January 11, 2021 before the Honorable Gene Pratter. Based on conferences with the Honorable Linda

---

[10] *See* Exhibit 2 at Article 4.3.
[11] *See* Exhibit 1, paragraph 1.
[12] *See* Exhibit 1, paragraph 2a.
[13] *See* Exhibit 2 at Article 19.1.1 (emphasis added)

Caracappa in the instant case, the judge previously presiding over this case, this case was specifically scheduled to go to trial *after* the D.A. Nolt/PMA case.[14]  The September 29, 2020 Scheduling Order states

> The case is now ready for final pre-trial preparation and submissions. However, throughout the pendency of this case, it has been represented to the court that resolution or trial of this matter is dependent on resolution of matters in dispute set forth in separate litigation in this court, identified as: D.A. Nolt, Inc. v. The Philadelphia Municipal Authority, et al., EDPA Civil No. 18-cv-4997 GEKP. ***Review of the docket in No. 18-cv-4997 shows that the District Court has set a date certain for trial on 1/11/2021. At this time, the court in the instant case wishes to enter a final pre-trial scheduling order, anticipating that the matter shall be ready for trial as of March 1, 2021***, subject to any continuing standing orders of the District Court, or further case specific scheduling orders.

*See* Exhibit 7 (emphasis added).    Unfortunately, the trial of the D.A. Nolt/PMA case was postponed due to a lack of courtroom space due to the Pandemic.[15]  The D.A. Nolt/PMA case has been scheduled for trial in June 2021, less than four months from now and less than two months from the time this case is scheduled for trial commencing on April 27, 2021.

## II.    STATEMENT OF QUESTION INVOLVED

Should this matter be stayed where:

1.    North American is entitled to all the defenses of its principal, D.A. Nolt;

2.    The applicable contract documents show that Umoja and RCC agreed to be bound by any findings from the resolution of the disputes between D.A. Nolt and the PMA;

3.    The applicable contract documents make payments due to RCC contingent upon D.A. Nolt's receipt of payment from the PMA;

---

[14] The September 29, 2020 Scheduling Order is attached hereto as Exhibit 7.
[15] The December 22, 2020 Notice Cancelling Hearing is attached hereto as Exhibit 8.

4.      The applicable contract documents allow D.A. Nolt to withhold payment from Umoja (and RCC) for claim made by the PMA against D.A. Nolt;

5.      D.A. Nolt and the PMA are currently in litigation over payment and delay damages issues in this Court; and

6.      There is the very real possibility of duplicative litigation and inconsistent verdicts in this case and the case between D.A. Nolt and the PMA?

**Suggested Answer:**   Yes.

## II.      **ARGUMENT**

### A.      **Legal Standard**

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997); *see United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). In exercising that discretion, a district court is to "weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *United States v. Zurich American Ins. Co.*, 99 F.Supp. 3d 543, 549-50 (E.D.Pa. 2015).

### B.      **North American Can Enforce the Terms of the Contracts Between and Among D.A. Nolt, Umoja and RCC**

It is well-established under Pennsylvania law that the liability of a surety is no greater than that of the surety's principal, and that a surety may assert any defense of which its principal could take advantage. *See Exton Drive-In, Inc. v. Home Indem. Co.*, 261 A.2d 319, 325 (Pa. 1969); *Gen. Equip. Mfrs. v. Westfield Ins. Co.*, 635 A.2d 173, 180 (Pa. Super. Ct. 1993); *Superior Precast, Inc. v. Safeco Ins. Co. of America*, 71 F. Supp. 2d 438, 452 (E.D. Pa. 1999) ("Under Pennsylvania law, it is axiomatic that the liability of a surety is not greater than that of a principal."); *Glass Artistry Arch. Glass & Metal v. Western Surety Co.*, 2010 U.S. Dist. LEXIS

7477 at *14-15, 2010 WL 331701, (E.D. Pa. Jan. 27, 2010); *Sloan & Co. v. Liberty Mutual Ins. Co.*, 2008 U.S. LEXIS 62384 at *8, 2008 WL 3732519 (E.D. Pa August 15, 2008).

### 1.   <u>The Parties Agreed to be Bound by the Findings of this Court in the D.A. Nolt/PMA dispute.</u>

In RCC's subcontract with Umoja, it agreed to be bound to Umoja to the same extent as Umoja is bound to D.A. Nolt.  Such language is enforceable to bind a subcontractor to language in a contractor's contract.  In *Gavlik Construction Co. v. H. F. Campbell Co.*, 526 F.2d 777 (3d Cir. 1975), a Gavlik, a subcontractor, filed an action against its general contractor, Campbell, seeking to recover amounts it alleged were due from the general contractor under several construction subcontracts. *Id.* at 780.  The general contractor filed a motion requesting a stay pending the general contractor's arbitration with the construction project's owner which involved non-payment for the subcontractor's work. *Id.*  The Third Circuit held, based on the subcontract's language, that the stay was proper and that the subcontractor's claims should be consolidated into the arbitration between the general contractor and the owner:

> Similarly, we find that Gavlik is subject to consolidated arbitration. Article 7 of the Gavlik subcontracts provides that [the] Subcontractor shall be bound to the Contractor by the terms and provisions of all of the Contract Documents, and assumes toward the Contractor, with respect to the Subcontractor's work, all of the obligations and responsibilities which the Contractor, by the Contract Documents has assumed toward the Owner. . . . Gavlik thereby accepted all the "terms and provisions" of the [Owner-Contractor] contract as binding upon it.

*Id.* at 788.

In *Sloan & Co. v. Liberty Mutual Ins. Co.*, 653 F.3d 175 (3d Cir. 2011), Sloan, a subcontractor, brought an action for non-payment against its general contractor's surety. *Id.* at 177.  Just like this case, the general contractor sued the construction project's owner for non-payment, including for the subcontractor's work. *Id.*  The general contractor and the project

owner settled their dispute; however, the subcontractor refused to accept a *pro rata* share of the

settlement proceeds. *Id.* at 178.  The subcontract contained a provision remarkably similar to the

one in this case:

> The decision or determination of [IOC] or its representative
> making the first and/or original decision shall be final and
> conclusive on [Sloan] except to the extent that [Shoemaker] may in
> its sole, exclusive and arbitrary discretion . . . appeal to other
> representatives of [IOC] or commence a proceeding in Court or
> arbitration or other dispute resolution forum . . . . Then, in such
> event, *[Sloan] agrees to be bound to [Shoemaker] to the same
> extent [Shoemaker] is bound to [IOC] by any final decisions of
> said other representative of [IOC] or of a Court of competent
> jurisdiction.*

*Id.* at 182 (emphasis added).  The Third Circuit upheld the judgment of the district court,

ordering that the subcontractor's recovery was limited by the subcontract to its share of the

general contractor's recovery in its action against the owner:

> We thus conclude that Paragraphs 20 and 6.f create a mechanism
> for passing through Sloan's remaining claims for final payment and
> peg Sloan's recovery to the amount that Shoemaker receives from
> IOC for Sloan's work. We believe that this outcome is consistent
> with the way in which the parties chose to allocate the risk of IOC
> non-payment.

*Id.* at 184.  The Third Circuit then acknowledged the standard in the construction industry that

contracting parties are free to and do often share the risk of non-payment by construction project

owners. *Id.* at 184-85

In this case, RCC's subcontract contains nearly the exact same language as the

subcontract in *Sloan*.  In addition, RCC's claims for non-payment are being passed through to

the PMA via D.A. Nolt's suit against the PMA in this Court.  Like the parties in *Sloan*, the

parties here chose to allocate the risk of non-payment by the PMA.  Therefore, this case must be

stayed pending resolution of the case between D.A. Nolt and the PMA.  Allowing this case to go

to trial first would fly in the face of the parties' agreement and could lead to inconsistent and unfair verdicts.

This Court has previously granted stays in actions against sureties pending pass-through litigation between the parties to a construction dispute. *See e.g., Progressive Pipeline Mgmt., LLC v. N. Abbonizio Contrs., Inc.*, No. 10-4551, 2011 U.S. Dist. LEXIS 38513 at *25-*26. (E.D.Pa. 2011) ("In the interests of judicial economy and so as to avoid the possibility of inconsistent results, we will exercise our discretion and stay the litigation against Arch pending the outcome of the  arbitration proceedings between Plaintiff and Abbonizio.") When sureties file motions to stay litigation pending resolution of pass-through claims of non-payment, other District Courts in Pennsylvania have been receptive. *See e.g., A.A. Bellucci Constr. Co. v. U.S. Sur. Co.*, No. 09-1755, 2010 U.S. Dist.LEXIS 8369, at *1-2 (M.D. Pa. Feb. 2, 2010); *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 416-19 (W.D. Pa. 2006).

## 2.   RCC's Right to Recovery is Limited to What D.A. Nolt Can Recover from the PMA

The subcontract between Umoja and RCC incorporated the terms of Umoja's contract with D.A. Nolt.

> Subcontractor further agrees. to be bound to Umoja by each and all of the terms of the Prime Subcontract between Nolt and  Umoja with respect to Subcontractor's work, and to assume toward Umoja all duties and obligations Umoja owes the general contractor Nolt under the Prune Subcontract with respect to the Subcontractor's work, and Umoja shall have the same rights and remedies against Subcontractor as Nolt has against Umoja under said Prime Subcontract with respect to the Subcontractor's work, with the same force and effect as though every such duty, obligation, right or remedy were set forth herein at length.

Exhibit 3.   Section 4.1.2 of Umoja's contract with D.A. Nolt makes D.A. Nolt's receipt of payment from the PMA a condition precedent to D.A. Nolt's duty to pay Umoja:

> Subcontractor recognizes that **payment from the owner to the Contractor for the Subcontractor's labor and materials is a condition precedent to payment from the Contractor to the Subcontractor**. By entering into the Subcontract, Subcontractor agrees to bear the risk of non-payment by the Owner.

Exhibit 2 (emphasis added).  Section 5.3 of that contract echoes this "pay if paid" requirement:

> Subcontractor recognizes that final **payment from the owner to the Contractor for the Subcontractor's labor and materials is a condition precedent to payment from the Contractor to the Subcontractor**. By entering into the Subcontract, Subcontractor agrees to bear the risk of non-payment by the Owner.

Exhibit 2 (emphasis added).  RCC Fabricators' subcontract with Umoja also contains a "pay if paid" payment term:

> Based upon itemized invoices received from Subcontractor, Umoja agrees to make progress payment to Subcontractor.  Each progress payment shall be in an amount equal to that portion of the Subcontract amount property allocable to completed Subcontractor work.  **Contingent upon payment by Nolt** progress payments, final payments and retainage shall be due and payable to Subcontractor within seven (7) calendar days from the date of Umoja payment received by Nolt.

Exhibit 3, page 2 (emphasis added).

Parties to a construction contract may use enforceable "pay if paid" clauses to "shift the risk of the owner's nonpayment under a subcontract from the contactor to the subcontractor." *Sloan & Co. v. Liberty Mutual Ins. Co.*, 653 F.3d 175, 184 (3d Cir. 2011).  "Pennsylvania law recognizes that pay-if-paid clauses present a condition precedent to payment." *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 730 F. Supp. 2d 401, 421 (E.D. Pa. 2010). The law imposes on parties to such a clause "an implied duty not to frustrate conditions precedent to their performance." *Id.* As the Supreme Court of Pennsylvania has stated, "if a promisor is himself the cause of the failure of performance . . . of a condition upon which his own liability depends, he

cannot take advantage of the failure." *Howley v. Scranton Life Ins. Co.*, 53 A.2d 613, 616 (Pa. 1947).

Sureties can assert "pay-if-paid" language in their principals' subcontracts as a defense to subcontractor claims. *Sloan & Co., supra; Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.*, 2018 U.S. Dist. LEXIS 123009 (E.D.Pa. 2018); *Glass Artistry Architectural Glass & Metal v. Western Surety Co.*, 2010 U.S. LEXIS 7477 (E.D.Pa. 2010). In *Sloan & Co.*, the Third Circuit determined that the combination of the "pay-if-paid" language, modifications and liquidating provisions resulted in the agreement that a subcontractor's claim against a surety would be limited to what the surety's principal/general contractor could collect on its claim against the project owner. *Sloan & Co., id. at* 181-83. Likewise, in *Glass Artistry*, this Court determined that a subcontractor's claim for payment against a surety was limited to what the surety's principal/general contractor could recover from the project owner. *Glass Artistry, id. at* *32.

The "pay-if-paid" clause in the subcontract between D.A. Nolt and Umoja expressly conditions D.A. Nolt's duty to pay Umoja on D.A. Nolt's receipt of those funds from the PMA. Thus, Umoja agreed that the risk that the PMA would not pay was transferred from D.A. Nolt to Umoja. Likewise, RCC Fabricators agreed to this express condition in its subcontract with Umoja through the section quoted above and the incorporation clause contained in its subcontract with Umoja.

In addition, North American's payment bond provides that North American shall have no liability provided that D.A. Nolt makes payment for all sums due:

> With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

13

*See* Exhibit 1.  This language negates North American's obligation to RCC Fabricators should

D.A. Nolt make payment for all sums due.

Section 4.5 of Umoja's subcontract with D.A. Nolt negates D.A. Nolt's obligation to pay

Umoja upon delays to the Project:

> Contractor shall not be obligated to make payments to
> Subcontractor under this Subcontract whenever the Contractor, in
> his sole discretion, shall determine that the Project is being or is in
> danger of being delayed by the Subcontractor.

*See* Exhibit 2, Section 4.5c.  Section 16.1.1 of Umoja's subcontract with D.A. Nolt provides

"Time is of the essence." *See* Exhibit 2.  Section 16.4.1 of Umoja's contract with D.A. Nolt

provides for withholding of payment from Umoja upon the PMA's claims of damages related to

delays to the Project:

> In the event of any failure of Subcontractor to complete his work
> within the required time, the Subcontractor hereby agrees to
> reimburse the Contractor for any and all <u>actual and/or</u> liquidated
> damages that may be assessed against the Contractor by the
> Owner, which are directly or indirectly attributable to work caused
> by the Subcontractor's failure to comply fully with the foregoing
> provision.

*See* Exhibit 2 (emphasis in original).  Section 16.4.2 of Umoja's subcontract with D.A. Nolt

provides for Umoja to compensate D.A. Nolt for any damages D.A. Nolt sustains due to delays

caused by Umoja:

> Subcontractor also agrees to pay to the Contractor such damages as
> the Contactor may sustain by reason of any delay, directly or
> indirectly, attributable to or caused by the Subcontractor.

*See* Exhibit 2.  Section 4.3 of Umoja's subcontract with D.A. Nolt allows the withholding of

payment for claims made by the PMA:

> The Contractor may deduct from amounts due or to become due to
> the Subcontractor on this Project any sums due or to become due to
> Contractor from the Subcontractor.

14

*See* Exhibit 2.

D.A. Nolt is clearly authorized by Sections 16.4.1 and 16.4.2 of its contract with Umoja to offset Umoja's and RCC Fabricators' claims for non-payment with the damages assessed by the PMA and those sought to be collected by the PMA.   The amount of RCC's claim is completely offset by the damages sought to be collected from D.A. Nolt by the PMC.  Therefore, there can be no amount due to Umoja from D.A. Nolt or to RCC Fabricators from North American at this time.   There may be after resolution of the D.A. Nolt/PMA case.  Accordingly, it only makes sense to stay this case for a few months to allow the trial of the D.A. Nolt/PMA case.

C.    **The Ongoing Case Between D.A. Nolt and the PMA Involve the Issues in this Case**

Lastly, the trial of the D.A. Nolt/PMA dispute will involve the exact same issues in this case.   For example, D.A. Nolt claims that "The PMA has failed and refused to pay Nolt the amounts due and owing for the work that it performed on the Project . . which constitutes a material breach of the Contract . . . Nolt has suffered damages in the amount of $2,564,329.37[16]." *See* Exhibit 4, paragraph 89-91.  The PMA claims that "Due to Nolt's delay in completing the roof in a timely manner the City incurred costs which are entirely attributable to Nolt . . . the City demands that judgment be entered in its favor and against Nolt in the amount of $2,722,288.12[17].   *See* Exhibit 5, paragraph 35.

If the Court finds that the PMA breached the contract by not paying D.A. Nolt, D.A. Nolt will be able to pay Umoja which will then be able to pay RCC.   Conversely, if the Court finds that delay in completion was D.A. Nolt's fault and awards damages to the PMA, there will not be

---

[16] This amount was later changed to $2,519,757.05.
[17] This amount has been reduced to $1,310,424.17.

anything due from D.A. Nolt to Umoja due to the pay if paid language in the subcontracts. Later, a case will then likely have to be tried to determine the role of RCC and Umoja in the delay of the Project and the damages owed to D.A. Nolt.

In this case, a stay would simplify the issues here and more likely, result in disposing of the payment issues raised by RCC in this case. RCC's payment issues cannot be determined without resolution of the PMA's claims of allegedly defective and late steel and roof work, which D.A. Nolt contends was caused by RCC's late delivery of the steel and Umoja's errors in erecting the steel. Whether RCC is entitled to payment for the work it performed is part and parcel of the question whether RCC's late delivery of the steel delayed the Project and thus, whether the PMA and D.A. Nolt suffered damages.

A stay in this case would also promote judicial economy because the parties, as required by the Contract Documents, are pursuing the contractually required claims process. Part of D.A. Nolt's claim against the PMA is for non-payment for the supply and erection of the structural steel at issue in this case. That case is scheduled for trial less than two months after this case is listed for trial. Because the issues of the late delivery of the steel necessarily affect the issues of RCC's entitlement to payment, granting the stay and permitting one trial to address these issues conserves the judicial resources of this Court. If this Court does not stay this case, North American will be subject to the risk of inconsistent judgments, as D.A. Nolt, its principal, will, on the one hand, be defending against the PMA's claim for damages due to delays and for costs associated with defective work, both of which are allegedly caused in part by RCC and on other hand, raising the same arguments and defenses here as to why RCC is not entitled to payment. It is possible the two trials would yield two different conclusions, possibly rendering North American and D.A. Nolt liable in both cases, especially as the D.A. Nolt/PMA trial would have

evidence of the entire dispute in front of it, while this Court might not have all such evidence. A stay would not only prevent this possibility but would also save the parties the expense of litigating the same issues twice. Also, the stay is limited to a definite period of time – until a determination of liability has been made in the underlying D.A. Nolt/PMA trial. *See United Sweetener USA v. NutraSweet*, 766 F.Supp. 212, 216 (De. 1991). The court in *Nutrasweet* held that allowing the simultaneous parallel actions "would add to – not subtract from – uncertainty, insecurity, and controversy." *Id.* Moreover, RCC will suffer no prejudice as it agreed in its subcontract to be bound to D.A. Nolt's receipt of payment from the PMA and to be bound by any disputes between D.A. Nolt and the PMA.

A stay of this action pending the outcome of the D.A. Nolt/PMA trial would (a) focus, if not resolve, the issues, defenses and evidence related to this action; (b) prevent the time and expense necessary to conduct parallel proceedings; and (c) would minimize the cost of any subsequent litigation in this Court.

## III.  CONCLUSION

For all of the above reasons, Defendant North American Specialty Insurance Company respectfully requests that this Honorable Court grant the instant motion and stay the proceedings and trial in this matter pending resolution of the matter captioned as No. 18-cv-4997.

Respectfully submitted,

Dated: February 19, 2021

**DEAN E. WEISGOLD, P.C.**
*s/ Dean E. Weisgold*
**DEAN E. WEISGOLD**
1835 Market Street, Suite 1215
Philadelphia, Pennsylvania 19103
Phone:        (215) 979-7602
Pennsylvania state ID No.  52927

## CERTIFICATE OF SERVICE

I, Dean E. Weisgold hereby certify that a true and correct copy of the foregoing Motion to Stay Proceedings was served upon the following on February ____, 2021 via notice of Electronic Case Filing:

Patrick J. Hughes, Esquire
Connell Foley LLP
Liberty View Bldg Suite 230
457 Haddonfield Rd
Cherry Hill , NJ 08002

Tsiwen M. Law, Esquire
Law & Associates, LLC
1617 John F. Kennedy Blvd.
Suite 1055
Philadelphia, Pa 19103

                              **DEAN E. WEISGOLD, P.C.**

Dated: February 19, 2021          *s/ Dean E. Weisgold*
                                  **DEAN E. WEISGOLD**
                                  1835 Market Street, Suite 1215
                                  Philadelphia, Pennsylvania 19103
                                  Phone:       (215) 979-7602
                                  Pennsylvania state ID No. 52927