## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RCC FABRICATORS, INC., | |
| Plaintiff, | CIVIL ACTION NO.: |
| v. | |
| UMOJA ERECTORS LLC, NORTH AMERICAN SPECIALTY INSURANCE COMPANY, | **COMPLAINT** |
| Defendants. | |

Plaintiff RCC Fabricators, Inc. ("RCC" and/or "Plaintiff") files the following Complaint against Defendants Umoja Erectors LLC ("Umoja") and North American Specialty Insurance Company ("NASIC") (collectively, "Defendants"), and states:

**I.     PARTIES**

1.     Plaintiff RCC is a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey.  RCC is engaged in the business of steel fabrication.

2.     Defendant Umoja is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania.  Umoja is engaged in the business of structural-steel installation.

3.     Defendant NASIC is a corporation organized and existing under the laws of the State of New Hampshire with its principal place of business in New Hampshire.  Among other things, NASIC is engaged in the business of issuing surety bonds including payment bonds.

**II.     JURISDICTION**

4.     This Court has subject matter jurisdiction over the above-captioned matter pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

1

**III.    VENUE**

5.    Venue in this District is proper pursuant to 28 U.S.C. §1391 because the contract upon which this action is based was performed within the territorial limits of the Eastern District Pennsylvania, and the project to which the action relates is situated within the Eastern District Pennsylvania, and a substantial part of the events, acts and omissions giving rise to Plaintiff's causes of action occurred within the Eastern District of Pennsylvania.

**IV.    FACTS**

6.    The facts of this case stem from a general contractor agreement between non-parties D.A. Nolt, Inc. ("Nolt") and the Philadelphia Municipal Authority, specifically called the "Public Safety Services Campus - Building Facade and Roof Improvement Project," Project No. 11-13-4108-01 ("the Project").

7.    In connection with the Project, Nolt executed a payment bond with NASIC (Bond No. 2195249) in the amount of $14,821,198.72.

8.    In connection with the Project, Nolt entered into a subcontract with Umoja regarding the erection of steel on the Project ("the Prime Subcontract").

9.    In connection with the Prime Subcontract, Umoja entered into a subcontract with RCC whereby RCC would be paid to furnish (but not erect) all of the fabricated steel and related materials to Umoja ("the RCC Subcontract"). A true and correct copy of the RCC Subcontract is attached hereto as Exhibit "A".

10.    RCC timely commenced and furnished the materials pursuant to the terms of the RCC Subcontract.

11.    RCC performed all of its work under the RCC Subcontract in a timely, good, and workmanlike manner, and in full compliance with all applicable requirements.

12.    RCC submitted timely invoices for payment for its work to Umoja.

13.    Umoja has not paid RCC in connection with the RCC Subcontract.

2

14.     To date, Umoja owes RCC $229,453.79 (exclusive of accrued interest, penalties, costs and attorneys' fees) that is due and owing for materials furnished pursuant to the RCC Subcontract.

15.     RCC has made repeated demands for payment, but Umoja failed and refused to pay the sums due and owing.

## COUNT ONE
### Violation of Prompt Pay Act against Umoja (73 P.S. §§ 501, et seq.)

16.     RCC repeats and incorporates herein by reference all of the allegations contained in the preceding paragraphs of this Complaint.

17.     Umoja's failure and refusal to pay RCC and its refusal to pay RCC in a timely manner constitute violations of Pennsylvania's Contractor and Subcontractor Payment Act, 73 P.S. §§ 501, et seq. (the "Act").

18.     Under the Act, RCC is entitled to recover interest at the rate of 1% per month from the date payment was due, a penalty in the amount of 1% per month from the date payment was due, and all attorneys' fees and costs incurred to collect the amounts wrongfully withheld.

19.     Thus, interest and penalties are accruing, pursuant to the Act, at the current rate of $2,294.53 per month (each) or $4,589.0758 total per month.

20.     Interest due under the Act totals at least $11,472.65 as of today's date.

21.     Penalties due under the Act total at least $11,472.65 as of today's date.

22.     Attorneys' fees and costs due under the Act total at least $3,000.00.

23.     Thus, under the Act, the total amount due from Umoja to RCC is as follows:

        $229,453.79 - Contract Balance;

        $22,945.30 - Statutory Interest / Penalties;

        $3,000.00 - Attorneys' Fees;

        $255,408.09 - TOTAL DUE.

**WHEREFORE**, RCC demands judgment in its favor and against Umoja in the amount of $255,408.09 as of today's date, plus continuing prejudgment interest and continuing penalties in an

3

4202419-1

amount to be determined by the evidence, postjudgment interest, ongoing attorneys' fees and costs, and such other relief as the court deems just and equitable.

## COUNT TWO
### Breach of Contract against Umoja

24.     RCC repeats and incorporates herein by reference all of the allegations contained in the preceding paragraphs of this Complaint.

25.     Umoja purchased materials from RCC pursuant to the terms of the RCC Subcontract, as evidenced by 3 invoices, dated between October 30, 2016 and May 31, 2016. True and correct copies of the invoices are attached hereto as Exhibit "B".

26.     The total amount of these invoices is $209,805.00.

27.     The variance between the aforementioned amount due and owing of $229,453.79 and the invoiced amount of $209,805.00 is due to the fact that the RCC Subcontract was never formally increased to account for additional work completed by RCC as a result of Umoja's miscalculation of field measurements.

28.     Umoja materially breached the RCC Subcontract with RCC by failing and refusing to pay RCC the amounts due and owing for performing its work under the RCC Subcontract, and by failing and refusing to pay said sums in a timely manner.

29.     As a direct and proximate result of Umoja's material breaches of the RCC Subcontract, RCC has suffered damages in the principal amount of $229,453.79 as of today's date.

**WHEREFORE,** RCC demands judgment in its favor and against Umoja in the amount of $229,453.79 as of today's date, plus continuing prejudgment interest and continuing penalties in an amount to be determined by the evidence, postjudgment interest, ongoing attorneys' fees and costs, and such other relief as the court deems just and equitable.

## COUNT THREE
### Unjust Enrichment and Quantum Meruit against Umoja

30.     RCC repeats and incorporates herein by reference all of the allegations contained in the preceding paragraphs of this Complaint.

4

4202419-1

31.     Umoja accepted and appreciated the benefits of the materials furnished by RCC on the Project.

32.     By retaining the benefits of the materials furnished by RCC without paying for these benefits, Umoja has been unjustly enriched.

33.     The amount of the unjust enrichment retained by Umoja is equal to the reasonable value of the materials furnished by RCC.

34.     The reasonable value of the materials furnished by RCC for which payment has not been received is the principal sum of $229,453.79 as of today's date.

35.     It would be inequitable for Umoja to retain the benefits of the materials furnished by RCC without payment of the reasonable value of the materials, as well as the other damages sustained by RCC as a result of the non-payment.

WHEREFORE, RCC demands judgment in its favor and against Umoja in the amount of $229,453.79 as of today's date, plus continuing prejudgment interest and continuing penalties in an amount to be determined by the evidence, postjudgment interest, on-going attorneys' fees and costs, and such other relief as the court deems just and equitable.

## COUNT FOUR
### Payment Bond Claim against NASIC (8 P.S. § 191, et seq.)

36.     RCC repeats and incorporates herein by reference all of the allegations contained in the preceding paragraphs of this Complaint.

37.     NASIC, as Surety, issued a Payment Bond ("Bond") number 2195249 in the amount of $14,821,198.72 naming Nolt as the Principal, the Philadelphia Municipal Authority as Obligee, and the City of Philadelphia as Co-Obligee. A true and correct copy of the Bond is attached hereto as Exhibit "C".

38.     The Bond is in relation to the subcontracted work to be performed in connection with the Project.

5

39. Umoja, pursuant to the Prime Subcontract with Nolt, contracted with Nolt and performed steel erection services for the Project.

40. RCC, pursuant to the RCC Subcontract with Umoja, contracted with Umoja and furnished the fabricated steel and related materials to be used for the steel erection services on the Project.

41. All of the materials furnished by RCC on the Project were of a good and merchantable quality, and the materials were accepted by Umoja.

42. RCC is a proper Claimant under the Bond.

43. More than 90 days have elapsed since RCC provided the last of the materials furnished to Umoja for use in the Project.

44. RCC provided Umoja with invoices totaling $229,453.79 for materials purchased by Umoja for use in the Project.

45. Those invoices are invoice numbers 2707, 2708, and 2787, and copies of them are attached hereto as part of Exhibit "B".

46. RCC has made a demand for payment of these invoices to Umoja and Nolt, but the invoices remain unpaid.

47. RCC has complied with all conditions precedent to bringing this claim on Bond.

48. Pursuant to the Bond, NASIC is liable to RCC in the amount of $229,453.79 under the RCC Subcontract.

**WHEREFORE**, RCC demands judgment in its favor and against NASIC in the amount of $229,453.79 as of today's date, plus continuing prejudgment interest and continuing penalties in an amount to be determined by the evidence, postjudgment interest, on-going attorneys' fees and costs, and such other relief as the court deems just and equitable.

6

4202419-1

**CONNELL FOLEY LLP**
*Attorneys for Plaintiff*
*RCC Fabricators, Inc.*

By: _____

Patrick J. Hughes #41403
LibertyView Building
457 Haddonfield Rd., Ste. 230
Cherry Hill, NJ 08002
(856) 317-7100
phughes@connellfoley.com

DATE  November 22, 2017

7

# EXHIBIT A

## SUBCONTRACT Between Umoja Erectors LLC and RCC Fabricators, Inc.

Umoja Erectors, LLC (hereinafter "Umoja") and RCC Fabricators, Inc. (hereinafter "Subcontractor"), intending to be legally bound, hereby agree as follows for the project, Public Safety Services Campus—Building Facade and Roof Improvements project to be located at 4601 Market Street, Philadelphia, Pennsylvania, 19104 ("Project"):

Scope of Work/Price: For the sum of $209,805.00, Subcontractor shall furnish (but not erect) all fabricated steel and related materials as more fully set forth in Subcontractor's July 28, 2016 RCC Fab Bid #: F15-8085 Rev 6, PSSC Building Facade and Roof Improvements—Bulletin 7 ("Subcontractor's Bid"), which Subcontractor's Bid is attached hereto and incorporated herein as Exhibit A, all in accordance with the project documents and drawings supplied by D.A. Nolte, Inc. (hereinafter "Nolt") for the Public Safety Services Campus—Building Facade and Roof Improvements Project, which project documents and drawings are identified in Exhibit A and in the subcontract between D.A. Nolt, Inc. ("Nolt") and Umoja (hereinafter the "Prime Subcontract"). RCC Fabricators will supply all such fabricated steel and related materials in strict compliance with this Subcontract, all applicable plans, drawings, modifications, clarifications, and specifications, addenda, and all contract documents as more fully set forth in Exhibit A, and in accordance with any governmental agency having jurisdiction over the Work. The price includes submission of all fabricated steel and related materials, as required by this Subcontract or applicable laws, ordinances, rules, regulations, or orders of governmental agencies with jurisdiction over Subcontractor's work, regardless of whether such requests are specifically identified in the contract documents. The price also includes all ~~taxes and~~ delivery charges. ~~To the extent that Umoja has represented to~~ ✗ ~~Subcontractor that sales or use tax is not applicable to the Subcontractor's work or a portion thereof, Umoja shall defend, indemnify, and hold harmless Subcontractor in any proceedings~~ for ~~the collection or audit of any and all sales or use tax that may become due or owing that has not been charged or collected by Subcontractor based on Umoja's representation. It is specifically agreed that this indemnification provision survives completion of the Subcontractor's work.~~

Contract Documents: The contract documents consist of this Subcontract, any general, supplementary, or other conditions or addenda to this Subcontract, all applicable plans and specifications, and revisions as of the date of this Subcontract as set forth in Exhibit A, for the Project Public Safety Services Campus Building Facade and Roof Improvements Project #11-13-4108-01 (Bid No. 4180GCON-E) at 4601 Market Street, Philadelphia, PA 19104 as identified in Exhibit B of the Prime Subcontract between D A Nolt and Umoja Erectors, LLC. Any contract documents not attached to this Subcontract are available for inspection at Nolt's office at 53 Cross Keys Road, Berlin, NJ 08009 at all reasonable times. Work applicable to this Subcontract that is shown in the plans but not the specifications or vice versa shall be taken as shown in both.

Subcontractor further agrees to be bound to Umoja by each and all of the terms of the Prime Subcontract between Nolt and Umoja with respect to Subcontractor's work, and to assume toward Umoja all duties and obligations Umoja owes the general contractor Nolt under the Prime Subcontract with respect to the Subcontractor's Work, and Umoja shall have the same rights and remedies against Subcontractor as Nolt has against Umoja under said Prime Subcontract with respect to the Subcontractor's work, with the same force and effect as

the supply of the fabricated steel and related material and shall comply with all applicable safety rules required by any federal, state, and local law, including OSHA, and all safety measures provided in writing by Umoja. Subcontractor shall also take all necessary precautions to protect all persons, work, material, equipment or other property on the project or in the vicinity of the project from any damage caused by the fabricated steel and related material. RCC Fabricators shall be responsible for any OSHA fines incurred related to delivery of the fabricated steel and related material.

**Hazardous Substances:** If Subcontractor supplies with the fabricated steel any substance reasonably believed to be asbestos, polychlorinated biphenyl or any other hazardous substance regulated by law, Subcontractor shall immediately notify Umoja.

**Payment:** Based upon itemized invoices received from Subcontractor, Umoja agrees to make progress payments to Subcontractor. Each progress payment shall be in an amount equal to that portion of the Subcontract amount properly allocable to completed Subcontractor work. (Contingent upon payment by Nolt progress payments, final payments and retainage shall be due and payable to Subcontractor within thirty (7) calendar days from the date of Umoja payment received by Nolt.) As an express condition precedent to any payment, Subcontractor shall supply Umoja with lien releases properly executed on a form reasonably approved by Umoja, and Subcontractor's acceptance of final payment hereunder shall constitute a general release of Umoja from any and all claims or liability of any kind or description relating to the Project, except those previously identified in writing and unsettled at the time of final payment, and except for third-party claims for personal injury (including death) and property damage. Any payment to Subcontractor shall not be considered an acceptance of Subcontractor's material or a waiver of any claims against Subcontractor.

   Umoja may withhold payment from Subcontractor in an amount sufficient to (a) satisfy, defend, and discharge any claim against Umoja resulting from Subcontractor's acts or omissions on the Project or Subcontractor's failure to pay its subcontractors, suppliers, employees or materialmen (provided that Umoja made payment to Subcontractor for such subcontractors, suppliers, employees, and materialmen, and for the subject matter of any notice of lien or lien claim); or (b) indemnify Umoja in accordance with the terms of this Subcontract.

**Mechanics' Lien Waiver:** Upon payment of each submitted invoice, Subcontractor will agree to waive all mechanics' lien rights that it acquired against the Philadelphia Municipal Authority property under this Subcontract.

**Warranty:** Subcontractor warrants that the fabricated steel and related materials furnished hereunder will be of good quality and new unless otherwise required by the contract documents. In addition to any other warranty required or implied by law, Subcontractor warrants that all of the fabricated steel and related material will be delivered in a good, workmanlike and timely manner and in compliance with all contract documents. For a period of one (1) year after Umoja's acceptance of the Subcontractor's work (or such longer period of time as may be required by law, the contract documents, or any special warranty), Subcontractor agrees, at its sole cost and expense, to repair or replace any defective or deficient fabricated steel and related material and any other work damaged as a result of such defective or deficient Subcontractor work.

**Cumulative Rights:** The rights and remedies herein reserved to Umoja are cumulative and in addition to any further rights and remedies available to it at law or in equity.

**Assignments:** Subcontractor shall not assign any portion of the fabricated steel and related materials covered by this Subcontract without Umoja's prior written consent; provided, however, that Subcontractor's suppliers shall be permitted to cut fabricated steel to length and to cut plates and related materials as specified on approved drawings.

**Termination/Right to Repair:** If Subcontractor fails to supply fabricated steel material in accordance with the terms and conditions of this Agreement, including without limitation, Subcontractor's failure to deliver the fabricated steel in accordance with the project schedule attached hereto as **Exhibit B**, Umoja may, after 72 hours written notice and a reasonable opportunity to cure under the circumstances, terminate this Agreement. If Umoja's cost to complete Subcontractor's work, including overhead, profit and attorneys' fees, exceeds the unpaid balance hereunder, Subcontractor shall pay Umoja the difference upon demand. If the cost to complete Subcontractor's work is less than the unpaid balance, then Umoja shall immediately make payment of the difference to Subcontractor. Without waiving such right to terminate this Subcontract, Umoja may, after giving the aforementioned notice and opportunity to cure, supply all labor, material or equipment necessary to correct any deficiencies or delays in Subcontractor's work/performance and Subcontractor shall pay Umoja the full cost of such corrective action, including overhead, profit and attorneys' fees immediately upon demand.

If for any reason, Umoja's contract with the owner is cancelled or terminated, Umoja may terminate this Subcontract immediately upon notice to Subcontractor, and Subcontractor shall be paid for purchased, fabricated, stored, and delivered materials. .

**Disputes:** If a dispute arises between Umoja and Subcontractor regarding quality of the fabricated steel and related material, or any alleged change to the specifications, Subcontractor shall timely perform the disputed work and shall give Umoja written notice of its claim for additional time and/or compensation for the Subcontractor's work within ten (10) days after commencement of the disputed work.

This Subcontract shall be governed by the laws of the Commonwealth of Pennsylvania. The forum for all disputes arising under or relating to this Subcontract shall be the state or federal courts in Philadelphia County, Pennsylvania.

**Attorneys' Fees/Costs:** Each party in any dispute commenced in court or arbitration shall be pay their own attorneys' fees, expert witness and consultant fees, interest and costs of litigation. Nothing herein is intended to waive any rights under applicable law.
**No Waivers:** No act, omission or delay by Umoja shall constitute a waiver of any of Umoja's rights or remedies under this Agreement.

**No Other Agreements:** This Subcontract is the entire agreement between the parties and there are no other agreements, understandings or representations between the parties except those expressly set forth herein. This Subcontract may not be altered or modified except by a writing signed by both parties.

**Severability:** If any of the terms of this Subcontract are subsequently or now finally

though every such duty, obligation, right or remedy were set forth herein at length. Should any conflict exist between the terms of this Subcontract, the Prime Subcontract, or any of the other contract documents, with respect to the Subcontractor's work, the provision imposing the greater duty or obligation on Subcontractor shall govern.

**Schedule/No Damages for Delay:** Subcontractor agrees, if required by Exhibit A, to furnish samples and shop drawings as necessary to deliver the fabricated steel in strict accordance with Umoja's schedule and project milestones as identified in Exhibit B, attached hereto and incorporated herein, and shall cooperate with Umoja to avoid any conflict, delay or interference with any work on the project. Subcontractor agrees to accelerate or delay performance as may be required to comply with Umoja's updated schedule; provided, however, that Subcontractor shall be compensated for any such accelerations or delays, (contingent on approval and payment by Nolt.)

Should Subcontractor be delayed in the performance of the Work by any cause beyond Subcontractor's control, Subcontractor's sole remedy for such delay shall be an extension of time for performance equal to the period of delay. Except for accelerations or delays that are not the result of Subcontractor's actions or failures to act, in no event shall Umoja be liable to Subcontractor for any damages for delays.

**No Consequential Damages:** Subcontractor and Umoja shall not be entitled to claim or recover any lost profits, consequential, incidental, special, or punitive damages against the other under any circumstances, including, but not limited to, termination.

**Changes:** Umoja may add to, delete from or modify the scope of the Subcontractor's work by issuing a written directive to Subcontractor, and when signed by Umoja and Subcontractor, the amount due hereunder will be adjusted accordingly by agreement of the parties. Subcontractor shall not be entitled to any additional compensation for any alleged extra work, unless Umoja Executes a written change order authorizing the performance of said work, which written authorization is an express condition precedent to any additional payment hereunder, and Subcontractor shall not be required to perform any additional or extra work without a written change order signed by Subcontractor and Umoja. Prior to commencement of any changed work, Subcontractor shall promptly submit any claim for an adjustment to the contract sum or project schedule relating to that change. If the parties cannot mutually agree on the price/schedule adjustment, the dispute shall be resolved in accordance with the "Disputes" clause of this Subcontract.

**Insurance:** Subcontractor, at its sole expense, shall provide the following insurance: Commercial General Liability: $1,000,000.00 per occurrence, $2,000,000.00 general aggregate, $2,000,000 Products and Completed Operations Aggregate; Automobile Liability: $1,000,000.00 combined single limit (each accident); Workers' Compensation: statutory requirements; Employers' Liability: $1,000,000.00 each accident, $1,000,000.00 each employee, $1,000,000.00 disease—policy limit; Professional Liability: $1,000,000.00 each claim, $1,000,000.00 aggregate; Umbrella or Excess Liability: $4,000,000 each occurrence, $4,000,000 aggregate. Umoja Erectors, LLC, and D.A. Nolt, Inc., shall be named as additional insureds on all such policies, and Subcontractor shall provide Umoja with proof of coverage before beginning any of the Subcontractor's work.

**Safety:** Subcontractor is responsible for and shall take all reasonable safety precautions in

**Clean-Up:** Subcontractor shall deliver the fabricated steel and related material in a way that will keep the project free from accumulation of waste materials caused or created by Subcontractor's delivery.

**Laws, Permits, Fees, and Notices:** Subcontractor warrants that it is familiar with all building, safety and other codes that apply to the Subcontractor's work pursuant to this Subcontract. Subcontractor agrees that, at its sole cost and expense, it will pay all taxes, fees and other costs, and comply with all laws, codes, standards, ordinances, rules, and regulations necessary to supply and deliver the fabricated steel and related material as required by this Subcontract.

**Risk of Loss:** Subcontractor will bear the risk of loss or damage to the fabricated steel and related material until it is delivered to the Project site and confirmed to meet project specifications and documents.

**Indemnification:** To the fullest extent permitted by law, Subcontractor will indemnify and hold harmless Umoja Erectors, LLC and its officers, directors, agents, servants, and employees harmless from and against all claims, liability, loss, damage, cost and expense, including the cost of any settlement, attorneys' fees and expert's or consultant's fees, to the extent caused or contributed to by any manufacturing defect in the fabricated steel supplied by Subcontractor, including faulty materials and workmanship of Subcontractor, its agents, employees and subcontractors, or anyone for which Subcontractor is responsible. In claims against Umoja by anyone directly or indirectly employed by Subcontractor, the indemnification obligation shall not be limited by any immunity, limitations of liability or limitations on recovery contained in any workers' or workmens' compensation acts, disability benefit acts or other employee benefit acts.

To the fullest extent permitted by law, Umoja shall defend, indemnify, and hold harmless Subcontractor, its consultants, agents, and employees from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees and expenses, arising out of or resulting from Umoja's obligations set forth in this Agreement or the breach thereof; in tort; under any statute, rule, or regulation; or under any other theory of law, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property, including loss of use resulting there from, but only to the extent caused in whole or in part by the actions or omissions of Umoja or anyone directly or indirectly employed by it or anyone for whose acts it may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this paragraph. In claims against any person or entity indemnified under this paragraph by an employee of Umoja or anyone directly or indirectly employed by it or anyone for whose acts it may be liable, the indemnification obligation under this paragraph shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for Umoja or anyone directly or indirectly employed by it or anyone for whose acts it may be liable, under workers' compensation acts, disability benefit acts or other employee benefit acts.

**Offsetting Accounts:** Not Applicable.

RCG

UG

determined to be illegal, invalid or unenforceable, they may be severed from this Subcontract without affecting the remaining terms.

<u>Heading:</u> The paragraph headings in this Subcontract are for convenience only and shall not limit, restrict or alter the content or meaning of this Subcontract.

UMOJA:                                    SUBCONTRACTOR:

UMOJA ERECTORS, L.L.C.                    RCC Fabricators, Inc.

By: _____              By: _____
Alburn H. Brown/President                    SCOTT R. VESPER /President

Exhibit A

(RCC Fabricator, Inc.'s August 2, 2016 RCC Fab Bid #: F15-8085 Rev 7,
PSSC Building Façade and Roof Improvements—Bulletin 7)

4010936.1 51852-0004

RCC

UE



## *Fabricators, Inc.*

**Structural Steel • Railroad and Heavy Equipment Fabrication • Miscellaneous Metals**

2035 Route 206 South • Southampton, NJ 08088 • Phone 609-859-9350 • Fax 609-859-9355

### "CERTIFIED SMALL BUSINESS ENTERPRISE"

**DATE:** August 2, 2016                                          **RCC Fab Bid #:** F15-8085
                                                                                 **REV 7**

**CLIENT:** Umoja Erectors LLC
                 924-26 N. 19th Street
                 Philadelphia, PA 19130
**PHONE:** 215-235-7676
**E-MAIL:** kiwisteelfab@aol.com
**ATTN:** Alburn Brown

**PROJECT: PSSC Building Façade and Roof Improvements – Bulletin 7**

We are pleased to quote the following item(s) on the above referenced project. This proposal is based
solely on the drawings supplied, as listed on the attached sheet. Any steel items indicated on drawings
not listed below or on the attached "Drawing & Specification List" are not included. Price includes shop drawings,
fabrication, coatings as outlined below and delivery of specified items only. Proposal limited to items and quantities
listed below:

- (29) Locations of _Galvanized_ W8 and/or W12 Bracing, with Hardware, as shown on Drawings S105.1 & S105.2
  (Fall Arrest Posts to be Supplied By Others)...............................................................................LUMP SUM **$23,836**
- (14) Prime Painted Drainage Roof Frames constructed from C6's and/or L4x4x3/8" Materials as shown on
  Drawing S106.1 & S106.2..............................................................................................................LUMP SUM **$14,603**
- Approx _6,230#_ of Prime painted Equipment Support Roof Steel with Connecting Hardware and 14ft² of 1½" deep, 22ga.
  Galv. Type B Roof Decking between column lines 18/D & 22/E on Drawing S106.1........................LUMP SUM **$17,992**
- Approx _13,145#_ of Prime Painted Roof Support Steel with Connecting Hardware and 105ft² of
  1½" deep, 22ga. Galv. Type B Roof Decking between column lines 1 & B on Drawing S106.2.........LUMP SUM **$37,987**
- Approx _14,190#_ of _Galvanized_ Penthouse Roof Framing with Connecting Hardware and 620ft² of 1½" deep, 22ga. Galv.
  Type B Roof Decking located at the New Stair/Elevator between column lines 9-10.3 & D.2-J
  on Drawing S106.2.........................................................................................................................LUMP SUM **$47,274**
- Approx 34,326# of Galvanized Screen Wall Framing with Connecting Hardware as shown on
  Drawing S300..................................................................................................................................LUMP SUM **$61,110**
- (One) Galvanized Roof Stair as shown on Drawing A503.............................................................LUMP SUM **$7,003**

                                                                                 **Total    $209,805**

**F.O.B.:**        Job Site (Maximum of 4 Deliveries)
**Delivery:**     4-6 Weeks from Receipt of Approved Shop Drawings
**Terms:**        30 Days from Date of Invoice. RCC Fabricators (RCCF) requires payment for Raw and/or
                     completed material in storage, as well as progress payments when drawings, hardware,
                     material & decking are delivered. Amounts to be based upon Schedule of Values,
                     to follow after award of contract.

### QUALIFICATIONS AND EXCLUSIONS ON PAGE 3   *(Cont'd on Next Page)*



E-mail: info@RCCFabricators.com • Website: www.RCCFabricators.com

**EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER**



 *Fabricators, Inc.*

**Structural Steel • Railroad and Heavy Equipment Fabrication • Miscellaneous Metals**

2035 Route 206 South • Southampton, NJ 08088 • Phone 609-859-9350 • Fax 609-859-9355

### "CERTIFIED SMALL BUSINESS ENTERPRISE"

**DATE:** August 2, 2016

RCC Fab Bid #: F15-8085
REV 7

**CLIENT:** Umoja Erectors LLC
924-26 N. 19th Street
Philadelphia, PA 19130
**PHONE:** 215-235-7676
**E-MAIL:** kiwisteelfab@aol.com
**ATTN:** Alburn Brown

**PROJECT:** PSSC Building Façade and Roof Improvements – Bulletin 7

We are pleased to quote the following item(s) on the above referenced project. This proposal is based solely on the drawings supplied, as listed on the attached sheet. Any steel items indicated on drawings not listed below or on the attached "Drawing & Specification List" are not included. Price includes shop drawings, fabrication, coatings as outlined below and delivery of specified items only. Proposal limited to items and quantities listed below:

- *(29)* Locations of _Galvanized_ W8 and/or W12 Bracing, with Hardware, as shown on Drawings S106.1 & S106.2 (Fall Arrest Posts to be Supplied By Others)....................................................................LUMP SUM **$23,836**
- (14) Prime Painted Drainage Roof Frames constructed from C8's and/or L4x4x3/8" Materials as shown on Drawing S106.1 & S106.2......................................................................................LUMP SUM **$14,603**
- Approx *8,230#* of Prime painted Equipment Support Roof Steel with Connecting Hardware and 14ft² of 1½" deep, 22ga. Galv. Type B Roof Decking between column lines 18/D & 22/E on Drawing S106.1.............................LUMP SUM **$17,992**
- Approx *13,145#* of Prime Painted Roof Support Steel with Connecting Hardware and 105ft² of 1½" deep, 22ga. Galv. Type B Roof Decking between column lines 1 & 9 on Drawing S106.2...........LUMP SUM **$37,987**
- Approx *14,190#* of _Galvanized_ Penthouse Roof Framing with Connecting Hardware and 620ft² of 1½" deep, 22ga. Galv. Type B Roof Decking located at the New Stair/Elevator between column lines 9-10,3 & D.2-J on Drawing S106.2...................................................................................................LUMP SUM **$47,274**
- Approx 34,325# of Galvanized Screen Wall Framing with Connecting Hardware as shown on Drawing S300...........................................................................................LUMP SUM $61,259 **61,110**
- (One) Galvanized Roof Stair as shown on Drawing A503......................................................LUMP SUM **$7,003**

Total **$209,805**

**F.O.B.:** Job Site (Maximum of 4 Deliveries)
**Delivery:** 4-6 Weeks from Receipt of Approved Shop Drawings
**Terms:** 30 Days from Date of Invoice. RCC Fabricators (RCCF) requires payment for Raw and/or completed material in storage, as well as progress payments when drawings, hardware, material & decking are delivered. Amounts to be based upon Schedule of Values, to follow after award of contract.

QUALIFICATIONS AND EXCLUSIONS ON PAGE 3   *(Cont'd on Next Page)*



E-mail: info@RCCFabricators.com • Website: www.RCCFabricators.com

EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER



# RCC Fabricators, Inc.

**Structural Steel • Railroad and Heavy Equipment Fabrication • Miscellaneous Metals**

2035 Route 206 South • Southampton, NJ 08088 • Phone 609-859-9350 • Fax 609-859-9355

## "CERTIFIED SMALL BUSINESS ENTERPRISE"
### (Cont'd from Previous Page)

DATE: August 8, 2016

RCC Fab Bid #: F15-8085
REV 7

PROJECT: PSSC Building Façade and Roof Improvements – Bulletin 7

Insurance coverage offered with the quotation is as follows; all other supplemental coverage requested will be an additional cost to the quote being offered:

| | |
|---|---|
| General Liability: | $ 1,000,000./per occurrence |
| | $ 2,000,000./aggregate |
| Auto: | $ 1,000,000. |
| Umbrella: | $ 25,000,000./per occurrence |
| Workers Comp: | $ 1,000,000./statutory limits |

RCC Fabricators, Inc. does not fabricate without approved drawings. Back charges will not be accepted without RCC Fabricators, Inc. review and opportunity to make corrections or repairs.

If successful, this Proposal must be included as part of Final Purchase Order or Contract issued to RCC Fabricators, Inc.

Thank you for the opportunity to quote this project. If you have any questions, please do not hesitate to contact me at 609-859-9350.

Sincerely,

Jeffrey Smilek,
Project Manager

## PRICE GOOD FOR 20 DAYS FROM DATE OF QUOTE
### (Cont'd on Next Page)



E-mail: Info@RCCFabricators.com • Website: www.RCCFabricators.com

EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER



**Structural Steel • Railroad and Heavy Equipment Fabrication • Miscellaneous Metals**

2035 Route 206 South • Southampton, NJ 08088 • Phone 609-859-9350 • Fax 609-859-9355

*"CERTIFIED SMALL BUSINESS ENTERPRISE"*
*(Cont'd from Previous Page)*

DATE: August 8, 2016

RCC Fab Bid #: F15-8085
REV 7

PROJECT: PSSC Building Façade and Roof Improvements – Bulletin 7

## QUALIFICATIONS & EXCLUSIONS

Qualifications for Steel:

1.  Proposal is based on a continuous fabrication operation with a maximum of four deliveries.
2.  Unobstructed access into and around building for all deliveries.
3.  Working/Delivery hours shall be 7:00 am to 3:30 pm during a normal work week (Monday to Friday).
4.  RCCF holds the right to suspend delivery activities due to adverse or extreme weather conditions.
5.  Survey of existing field conditions including, but not limited to, installed anchor bolts, steel framing, elevations, etc. to be provided by the GC prior to the preparation of shop drawings.
6.  Price subject to change based upon existing field conditions.
7.  Refer to RCCF Standard Terms and Conditions.
8.  Engineering for connections only.

Exclusions:

1.  Sales and/or Use Tax
2.  Electrical and Mechanical supports not indicated on the structural drawings as listed on the attached sheet.
3.  Screen Wall
4.  Field Measurements.
5.  Off Loading of Delivered Materials.
6.  Setting of any type of anchor bolts.
7.  Grouting of base plates, bearing plates, lintels.
8.  Light gauge material including, cold rolled, sheet, and fabricated trusses.
9.  Painting of connections after erection, touch-up painting, finish painting.
10. Professional Engineering Calculations for safety posts.
11. Cutting and framing for any deck opening not indicated on the structural drawings as listed on the attached sheet.

*(Cont'd on Next Page)*

E-mail: Info@RCCFabricators.com • Website: www.RCCFabricators.com

EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER



**Structural Steel • Railroad and Heavy Equipment Fabrication • Miscellaneous Metals**

2035 Route 206 South • Southampton, NJ 08088 • Phone 609-859-9350 • Fax 609-859-9355

## "CERTIFIED SMALL BUSINESS ENTERPRISE"
### (Cont'd from Previous Page)

DATE: August 6, 2015

RCC Fab Bid #: F15-8085
REV 7

PROJECT: PSSC Building Façade and Roof Improvements – Bulletin 7

### Drawing and Specification List

Project Owner:
CM/Contract Admin.:
Designer of Record:
Contract No.:
Design Percentage:

**Drawings Included In Proposal:**

| Drawing No. | Revision No. | Drawing Date | Received by RCC Fab |
|---|---|---|---|
| CS1.1, CS1.2, CS1.3, A201, A202, A301, A302, A401, A402, A501,A502, A503, S001, S106.1, S106.2, S300, S511, S512, S513, S514 | N/A | 04/02/2015 | 6/11/2015 |
| S001 | Bulletin 7 | 2/29/16 | 4/19/16 |
| S106.1 | Bulletin 7 | 2/29/16 | 4/19/16 |
| S106.2 | Bulletin 7 | 2/29/16 | 4/19/16 |
| S511 | Bulletin 7 | 2/29/16 | 4/19/16 |
| S512 | Bulletin 7 | 2/29/16 | 4/19/16 |
| S513 | Bulletin 7 | 2/29/16 | 4/19/16 |
| S514 | Bulletin 7 | 2/29/16 | 4/19/16 |
| S300 | Bulletin 7 | 2/29/16 | 4/19/16 |
|  |  |  |  |
|  |  |  |  |

**Specifications Included In Proposal:**

Specifications were not provided. Only the notes incorporated into the drawings listed above have been used in the preparation of this proposal.

| Section No. | Description | Revision No. | Received by RCC Fab |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |



E-mail: info@RCCFabricators.com • Website: www.RCCFabricators.com

EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER





# *RCC Fabricators, Inc.*

**Structural Steel • Railroad and Heavy Equipment Fabrication • Miscellaneous Metals**

2035 Route 206 South • Southampton, NJ 08080 • Phone 609-859-9350 • Fax 609-859-9355

## GENERAL TERMS AND CONDITIONS

1. **Contract Documents.** The Contract between Buyer and Seller consists of the Proposal, Buyer's written acceptance (excluding any conditional or qualifying terms to such acceptance), and other Terms expressly agreed to in writing by the Parties, all of which supersede all prior and contemporaneous written and oral negotiations, offers, and agreements. Any terms or conditions contained in Buyer's purchase order, shipping releases or any other documents that are different from or add to the terms and conditions set forth herein, are not and shall not become a part of the Contract. No written or oral agreement that purports to vary these terms and conditions shall be binding upon Seller, unless set forth in writing signed by Seller.

2. **Pricing and Scheduling.** Prices are firm only through the Escalation Date. A final delivery schedule is to be mutually agreed in writing by Buyer and Seller. For each month that Buyer declines to accept delivery beyond the mutually agreed delivery date, a $250 charge per main member, including, but not limited to, legs, posts, truss sections and arms, beams and columns may be assessed to Buyer to cover Seller's storage and finance costs.

3. **Delayed Delivery.** At the discretion of the Seller, in the event the Buyer does not take steel deliveries within two (2) months beyond the mutually agreed upon ship date, the Buyer will accept and take delivery of the steel to an alternate delivery location, provided by the Buyer, and Buyer will offload the steel from the Seller's trailers. When the job site is ready for steel deliveries, and the Buyer elects, the Seller will provide a separate cost for the equipment and transit to move the steel from the Buyer's location to the jobsite. Seller will then agree to move the steel in accordance with a mutually agreed upon Change Order.

4. **Payment Terms.** Buyer shall provide to Seller the date(s) by which it requires invoices to be submitted each month. If no other dates are provided by Buyer, Seller shall submit invoices on or before the 10th and 25th day of each calendar month. Unless specified otherwise by Owner, Seller will submit progress invoices to the Buyer for (a) purchased raw materials, (b) stored fabricated materials, and (c) materials shipped to the jobsite. Buyer shall pay all invoices, without retainage, within five (5) days of Buyer's receipt of payment from Owner, or within forty-five (45) days of invoice date, whichever occurs first. Buyer's obligation to pay shall not be contingent on its receipt of payment from any other party (including the Owner) or payment terms contained in any contract between Buyer and any other party. In the event of a default by Buyer, Seller may exercise all available remedies, including withholding of Goods.

5. **Buyer's Delays.** Seller shall have no liability for performance delays resulting from Buyer's failure to perform its obligations upon which Seller depends in meeting the mutually agreed delivery schedule, including but not limited to, delayed project award, late receipt of field-related data, major design changes, and a drawing approval cycle exceeding four (4) weeks. In no event will Seller be liable, directly or indirectly, for contract damages, liquidated damages or penalties assessed against Buyer for late performance under any agreement to which Buyer is a party and to which the Proposal relates.

6. **Laws and Regulations.** Both Buyer and Seller will comply with all applicable laws, regulations, statutes, and ordinances, and each shall indemnify and hold the other harmless from any liabilities incurred because of its violations. The Contract shall be construed under and be governed by New Jersey law and shall be considered made in Burlington County, New Jersey, with venue and jurisdiction.

7. **Taxes.** Unless otherwise specifically noted, the prices offered in the Proposal do not include sales, excise or other taxes payable on account of the transaction and all such taxes now or hereafter applicable to this transaction shall be paid by Buyer. All taxes that the Seller may be required to pay or collect on account of its

Page 1 of 3





**_Fabricators, Inc._**

Structural Steel • Railroad and Heavy Equipment Fabrication • Miscellaneous Metals

2035 Route 206 South • Southampton, NJ 08088 • Phone 609-859-9350 • Fax 609-859-9355

performance under the Proposal, or under any existing or future law, shall be borne by Buyer and Buyer shall promptly pay the amount of such taxes to Seller.

8. **Buyer's Design Liability.** Buyer shall defend, indemnify and hold Seller harmless from all claims, loss, expense, liability, damage, or injury arising from all designs, devices and parts furnished to Seller regardless of modifications or changes suggested by Seller, and from infringement and other claims related to the use of such designs, devices or parts by third parties.

9. **Subcontracting.** Seller may subcontract all or part of its obligations under the Proposal, however, such subcontracting will not relieve Seller of those obligations.

10. **Fabrication.** Materials will be fabricated in accordance with design drawings and specifications and with detailed shop drawings as approved by Owner or Owner's authorized representatives. Shop inspection will be performed by Seller in accordance with Owner's requirements and applicable AWS and AISC standards. Buyer, at its expense, must set, drill, grout, and tighten anchor bolts for steel members. Unless otherwise provided in the Proposal, Seller's price does not include costs associated with field measurements, site surveys, shop inspection by independent agencies, removal of hauling residue, field cleaning of any stain resulting from steel oxidization, field touch-up paint and painting or field touch-up of galvanizing.

11. **Delivery.** The following apply when Seller is responsible for delivery:
    a. Delivery by truck will be f.o.b. point of fabrication with freight allowed to the nearest accessible point to the jobsite, which shall be determined solely by the delivery driver.
    b. Buyer, at its own expense, must provide and maintain suitable access from a public road to the jobsite to assure safe and efficient delivery.
    c. The freight allowance does not include charges for unloading, switching, spotting, cartage, demurrage or other similar services, all of which will be additional charges to Buyer if performed by Seller.
    d. The freight allowance for truck deliveries is based on a minimum load of 30,000 pounds.
    e. The freight allowance includes two (2) hours at the jobsite for unloading each truck delivery.
    f. If Seller ships anchor bolts, bearings, embedded items, etc. in advance, Buyer will be responsible for unloading and safe storage of same.
    g. Buyer shall inspect materials upon receipt for condition and completeness against the weight and shipping list, and if there is damage, a shortage, or nonconformance Buyer may not return the materials but must note the damage, shortage, or nonconformance on the weight and shipping list and file a written claim with the carrier within ten (10) days, whether the carrier is the Seller or another; otherwise, conformance, quality, and completeness shall be conclusively presumed and the Buyer will be deemed to have waived all claims; Seller will remedy damage or nonconformance by delivery of undamaged or conforming goods or by arranging for field repair at its option, in which event Seller's delivery obligations will be extended for a reasonable period of time.
    h. Unless otherwise provided in the Proposal, truck deliveries will be weekdays, during Seller's normal working hours, via non-union equipment and personnel. The Buyer will be responsible for all union assessments incurred by Seller.
    i. All shipping materials used for hauling, crating, blocking, tie-down, etc. shall remain the property of Seller. When necessary, Buyer, at no cost to Seller, must load onto Seller's trucks all such shipping materials.

12. **Delayed Unloading.** If Contractor is unable to unload material from RCCF's trucks within two (2) hours of arrival, it must compensate RCCF at its customary rates for additional wait time at the jobsite or staging area. If RCCF's

Page 2 of 3

E-mail: info@RCCFabricators.com • Website: www.RCCFabricators.com

EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER





# RCC Fabricators, Inc.

**Structural Steel • Railroad and Heavy Equipment Fabrication • Miscellaneous Metals**

2035 Route 206 South • Southampton, NJ 08088 • Phone 609-859-9360 • Fax 609-859-9355

truck cannot be unloaded on the delivery day, Contractor shall be liable for (a) the expense of transporting the material back to the RCCF's plant and unloading, reloading, and reshipping the material at a later date, or (b) daily rental of shipping equipment left parked at the jobsite or staging area, and round trip expenses for High Steel to retrieve all shipping equipment that was left. Equipment left shall be charged at: (w) flatbed, pull-apart, or stretch trailers, $85.00 per day; (x) Jeeps, steerable trailers, air-ride dollies: $450.00 per day for each combination; (y) Jockey time, including travel time to jobsite if required: $120.00 per hour plus $0.70 per mile round trip travel; and (z) 110% of the cost billed to RCCF by its vendor(s) for any other equipment rented or leased to deliver the material. In the event Contractor is unable to unload the material from RCCF's equipment, RCCF shall at its sole discretion determine whether equipment will be left at the jobsite or the material returned to RCCF's facility. Charges arising under this Section shall be invoiced weekly and invoices due in 7 days.

13. **Warranties and Limitation of Seller's Liability.** Seller warrants against defects in workmanship for one (1) year provided notice of such defect is given within one (1) year after delivery to Buyer. Seller's obligations and liabilities under this warranty are limited to the repair or replacement of defective parts supplied by Seller, with Seller to determine in its sole discretion whether a part is defective and whether repair or replacement is appropriate. Field repairs are not permitted without Seller's prior written authorization. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATIONS THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Furthermore, Seller shall have no liability for any labor claims or any other special, direct, indirect, incidental of consequential damages, with Seller's liability being limited to its obligations under this warranty. Seller shall have no liability nor obligations, including warranty obligations, with respect to materials that have been in an accident when in Seller's possession or that have been abused, misused, altered or improperly installed by persons other than Seller, or that have been rendered defective or unusable by Acts of God.

14. **Force Majeure Issues.** If Seller shall be delayed or interrupted in the performance or completion of its work under this Contract, including without limitation its ability to deliver products by it, by any force majeure event, the time of completion specified in this Contract shall be extended for a period equivalent to the time lost as a result of the force majeure event and entitled to an equitable adjustment of the contract price to reflect increased material costs caused by any force majeure event. By way of example and not limitation, force majeure events shall include any act, neglect, or default of the Owner, Contractor, or any Subcontractor; an embargo, war, fire, flood, earthquake, epidemic or other calamity; act of God or of the public enemy; governmental act, any supplier's imposed allocation or product limitation; road, bridge or railroad construction or restriction that prevents or slows usage of the preferred delivery route, or any strike or labor dispute involving the Owner, or any manufacturer, supplier or carrier of the materials or supplies required.

15. **Past Due Interest; Collection Fees.** All invoices shall accrue late fees equivalent to one percent (2%) per month if payment is not received by the required date calculated from the day following the due date to the date Seller receives readily available funds, including post-judgment periods. In the event Seller is required to bring an action to recover amounts owing to it, Seller shall be entitled to recover its costs, plus reasonable attorney's fees.

16. **Nonwaiver.** The waiver by Seller of any provision in the Contract documents shall not be deemed a waiver of that provision at any subsequent time or of any other provision.

Page 3 of 3

E-mail: info@RCCFabricators.com • Website: www.RCCFabricators.com

EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER



# EXHIBIT B

**RCC Fabricators, Inc.**

Structural Steel · Railroad and Heavy Equipment Fabrication · Miscellaneous Metals

Branch Office: 2035 Route 206 South · Southampton, NJ 08088 · Phone: 609-859-9350 · Fax: 609-859-9355
Main Office: 75-77 Grove Street · Paterson, NJ 07503 · Phone: 973-684-0362 · Fax: 973-684-1355

March 17, 2017

***Via Certified Mail/Return Receipt Requested***
***And First Class Mail***
Richard O'Brien
D.A. Knolt, Inc.
53 Cross Keys Road
Berlin, N.J. 08009

Re:  Public Safety Services Campus Building Façade and Roof Improvement Project
      Project No. 11-13-4108-01 (the "Project")
      4601 Market Street, Philadelphia, PA 19104 and
      City of Philadelphia Payment Bond - Bond #2195249 (the "Payment Bond")
      City Contract #164020 (the "Contract")
      By and Between:  D.A. Knolt, Inc. -and- North American Specialty Insurance Company

The following items shall serve as a summary in support of the aforementioned monetary amount that is due RCC Fabricators, Inc.:

| | |
|---|--:|
| Base Contract | $209,805.00 |
| Remake WT Pieces per Client's Direction | $6,500.00 |
| Modify column 3C1 & Beam 8B1 | $2,250.00 |
| Remake (2) 35B3 per Client's Directive | $2,794.00 |
| Remake 11B1 End Connection per Client's Directive | $850.00 |
| Remake Column 22C2 Base Plate per Client's Directive | $1,250.00 |
| Remake Screen Wall Pieces per Client's Directive | $7,525.00 |
| Coating Credit per Client's Directive | ($11,163.15) |
| Remake 33B2 per Client's Directive | $1,590.00 |
| Remake 9B6-4C1 Connection per Client's Directive | $1,202.94 |
| Add Stair Extensions per Client's Directive | $1,135.00 |
| Shoring Post Location Calculations | $5,715.00 |

Email: Info@RCCFabricators.com · Website: www.RCCFabricators.com

EQUAL OPPORTUNITY · AFFIRMATIVE ACTION EMPLOYER

# APPLICATION AND CERTIFICATE FOR PAYMENT

Invoice #: 2707

To Owner: UMOJA Erectors, LLC
924-26 N. 19th Street

Philadelphia, PA 19130

Project: F158085. F PSSC Fabrication

Application No.: 1

Period To: 10/30/2016

From Contractor: RCC Fabricators, Inc.
2035 US-206 South
Southampton, NJ 08088

Via Architect:

Project Nos:

Contract For:

Contract Date

Distribution To:
☐ Owner
☐ Architect
☐ Contractor

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet is attached.

| | | |
|---|---|---|
| 1. Original Contract Sum · · · · · · · · · · · · · · · · · | | $209,805.00 |
| 2. Net Change By Change Order · · · · · · · · · | | $1,203.00 |
| 3. Contract Sum To Date · · · · · · · · · · · · · | | $211,008.00 |
| 4. Total Completed and Stored To Date · · · · · · · | | $136,373.25 |
| 5. Retainage: | | |
| a. 00% of Completed Work | $0.00 | |
| b. 00% of Stored Material | $0.00 | |
| Total Retainage · · · · · · · · · | | $0.00 |
| 6. Total Earned Less Retainage · · · · · · · · · | | $136,373.25 |
| 7. Less Previous Certificates For Payments · · · · · · · · · | | $0.00 |
| 8. Current Payment Due · · · · · · · · · · · · | | $136,373.25 |
| 9. Balance To Finish, Plus Retainage · · · · · · · · · | | $74,634.75 |

| CHANGE ORDER SUMMARY | Additions | Deductions |
|---|---|---|
| Total changes approved in previous months by Owner | $1,203.00 | $0.00 |
| Total Approved this Month | $0.00 | $0.00 |
| TOTALS | $1,203.00 | $0.00 |
| Net Changes By Change Order | $1,203.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information, and belief, the work covered by this Application for Payment has been completed in accordance with the Contract Documents. That all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:    RCC Fabricators, Inc.

By: _____ Date: _____

State of: _____ County of: _____
Subscribed and sworn to before me this _____ day of _____
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT
In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information, and belief, the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED

AMOUNT CERTIFIED   $ 136,373.25

(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified )

ARCHITECT:

By: _____ Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment, and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

# CONTINUATION SHEET

Application and Certification for Payment, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

**Application No. :** 1
**Application Date :** 12/07/16
**To:** 10/30/16
**Architect's Project No.:**

**Invoice # :** 2707

**Contract :** F15B085. F PSSC Fabrication

| A Item No. | B Description of Work | C Scheduled Value | D Work Completed From Previous Application (D+E) | E Work Completed This Period In Place | F Materials Presently Stored (Not in D or E) | G Total Completed and Stored To Date (D+E+F) | % (G/C) | H Balance To Finish (C-G) | I Retainage |
|---|---|---|---|---|---|---|---|---|---|
| 1 | PSSC Fabrication | 209,805.00 | 0.00 | 136,373.25 | 0.00 | 136,373.25 | 65.00% | 73,431.75 | |
| 2 | PSSC Fabrication App. #1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| 3 | PSSC Fabrication App. #1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| 4 | PSSC Fabrication App. #2 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| Y9900.01 | Windscreen CJP vs PJP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| ZZ9000.09 | RFI 16 9B6-4C1 Connection | 1,203.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 1,203.00 | |
| | **Grand Totals** | 211,008.00 | 0.00 | 136,373.25 | 0.00 | 136,373.25 | 64.63% | 74,634.75 | 0.00 |

# APPLICATION AND CERTIFICATE FOR PAYMENT

| | |
|---|---|
| **To Owner:** UMOJA Erectors, LLC | **Project:** F158085. F PSSC Fabrication |
| 924-26 N. 19th Street | |
| Philadelphia, PA 19130 | |
| **From Contractor:** RCC Fabricators, Inc. | **Via Architect** |
| 2035 US-206 South | |
| Southampton, NJ 08088 | |

**Invoice #:** 2708

**Application No.:** 2

**Period To:** 11/30/2016

**Project Nos:**

**Contract Date:**

**Distribution to:**
- [ ] Owner
- [ ] Architect
- [ ] Contractor

**Contract For:**

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet is attached

| | | |
|---|---|---|
| 1. Original Contract Sum . . . . . . . . . . . . . . . | | $209,805.00 |
| 2. Net Change By Change Order . . . . . . . . . . . . . . . | | $1,203.00 |
| 3 Contract Sum To Date . . . . . . . . . . . . . . . | | $211,008 00 |
| 4. Total Completed and Stored To Date . . . . . . . . . . . . . . . | | $198,643.37 |
| 5. Retainage: | | |
| a. 0.00% of Completed Work | $0.00 | |
| b. 0.00% of Stored Material | $0.00 | |
| Total Retainage . . . . . . . . . . . . . . . | | $0.00 |
| 6. Total Earned Less Retainage . . . . . . . . . . . . . . . | | $198,643.37 |
| 7. Less Previous Certificates For Payments. . . . . . . . . . . . | | $136,373.25 |
| 8. Current Payment Due . . . . . . . . . . . . . . . | | $62,270.12 |
| 9. Balance To Finish, Plus Retainage . . . . . . . . . . . . . . . | | $12,364.63 |

| CHANGE ORDER SUMMARY | Additions | Deductions |
|---|---|---|
| Total changes approved in previous months by Owner | $1,203.00 | $0.00 |
| Total Approved this Month | $0.00 | $0.00 |
| **TOTALS** | $1,203.00 | $0.00 |
| Net Changes By Change Order | $1,203.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information, and belief, the work covered by this Application for Payment has been completed in accordance with the Contract Documents. That all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

**CONTRACTOR:** RCC Fabricators, Inc.

By:_____ Date:_____

State of: _____ County of: _____
Subscribed and sworn to before me this _____ day of _____
Notary Public: _____
My Commission expires: _____

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information, and belief, the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

**AMOUNT CERTIFIED  $ 62,270.12**

*(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*

**ARCHITECT:**

By:_____ Date:_____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment, and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

# CONTINUATION SHEET

Application and Certification for Payment, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

Invoice # : 2708          Contract : F15B085. F PSSC Fabrication

Application No. : 2
Application Date : 12/07/16
To : 11/30/16
Architect's Project No. :

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| Item No. | Description of Work | Scheduled Value | Work Completed From Previous Application (D+E) | This Period In Place | Materials Presently Stored (Not in D or E) | Total Completed and Stored To Date (D+E+F) | % (G/C) | Balance To Finish (C-G) | Retainage |
| 1 | PSSC Fabrication | 209,805.00 | 136,373.25 | 62,270.12 | 0.00 | 198,643.37 | 94.68% | 11,161.63 | |
| 2 | PSSC Fabrication App. #1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| 3 | PSSC Fabrication App. #1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| 4 | PSSC Fabrication App. #2 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| rY9900.01 | Windscreen CJP vs PJP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| ZZ9000.09 | RFI 16 9B6-4C1 Connection | 1,203.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 1,203.00 | |
| | **Grand Totals** | 211,008.00 | 136,373.25 | 62,270.12 | 0.00 | 198,643.37 | 94.14% | 12,364.63 | 0.00 |

# APPLICATION AND CERTIFICATE FOR PAYMENT

Invoice #: 2787

To Owner: UMOJA Erectors, LLC
924-26 N. 19th Street

Philadelphia, PA 19130

Project: F158085. F PSSC Fabrication

Application No.: 3

Period To: 5/31/2017

From Contractor: RCC Fabricators, Inc.
2035 US-206 South
Southampton, NJ 08088

Via Architect:

Project Nos:

Contract For:

Contract Date:

Distribution to:
☐ Owner
☐ Architect
☐ Contractor

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet is attached

| | | Additions | Deductions |
|---|---|---|---|
| 1. Original Contract Sum .............. | $209,805.00 | | |
| 2. Net Change By Change Order ..... | $1,203.00 | | |
| 3. Contract Sum To Date ............. | $211,008.00 | | |
| 4. Total Completed and Stored To Date....... | $209,805.00 | | |
| 5. Retainage: | | | |
| a.   0.00%  of Completed Work | $0.00 | | |
| b.   0.00% of Stored Material | $0.00 | | |
| Total Retainage  ............ | $0.00 | | |
| 6. Total Earned Less Retainage ....... | $209,805.00 | | |
| 7. Less Previous Certificates For Payments..... | $198,643.37 | | |
| 8. Current Payment Due ........ | $11,161.63 | | |
| 9. Balance To Finish, Plus Retainage  ......... | $1,203.00 | | |

| CHANGE ORDER SUMMARY | Additions | Deductions |
|---|---|---|
| Total changes approved in previous months by Owner | $1,203.00 | $0.00 |
| Total Approved this Month | $0.00 | $0.00 |
| TOTALS | $1,203.00 | $0.00 |
| Net Changes By Change Order | $1,203.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information, and belief, the work covered by this Application for Payment has been completed in accordance with the Contract Documents. That all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:         RCC Fabricators, Inc.

By:_____        Date:_____

State of:                                                   County of:
Subscribed and sworn to before me this                 day of
Notary Public:
My Commission expires

### ARCHITECT'S CERTIFICATE FOR PAYMENT
In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information, and belief, the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED   $ 11,161.63

(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)

ARCHITECT:

By:_____        Date:_____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment, and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

# CONTINUATION SHEET

Application and Certification for Payment, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

Invoice # : 2787

Contract : F158085. F PSSC Fabrication

Application No. : 3
Application Date : 05/18/17
To: 05/31/17
Architect's Project No.:

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| Item No. | Description of Work | Scheduled Value | Work Completed From Previous Application (D+E) | Work Completed This Period In Place | Materials Presently Stored (Not in D or E) | Total Completed and Stored To Date (D+E+F) | % (G / C) | Balance To Finish (C-G) | Retainage |
| 1 | PSSC Fabrication | 209,805.00 | 198,643.37 | 11,161.63 | 0.00 | 209,805.00 | 100.00% | 0.00 | |
| 2 | PSSC Fabrication App. #1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| 3 | PSSC Fabrication App. #1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| 4 | PSSC Fabrication App. #2 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| Y9900.01 | Windscreen CJP vs PJP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | |
| Z2900.09 | RFI 16 9B6-4C1 Connection | 1,203.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 1,203.00 | |
| | **Grand Totals** | 211,008.00 | 198,643.37 | 11,161.63 | 0.00 | 209,805.00 | 99.43% | 1,203.00 | 0.00 |

# EXHIBIT C



# CITY OF PHILADELPHIA

## PAYMENT BOND

Bid No. ___4108GCON-E___          Bond No. ___2195249___

City Contract No. ___164020___     Bond Amount ___$14,821,198.72___

1.  **DA NOLT, INC.** _____ and Surety

    North American Specialty Insurance Company

    jointly and severally, bind themselves, their heirs, executors, administrators successors and assigns to the Philadelphia Municipal Authority (the "Authority"), and Co-Obligees and the City of Philadelphia to pay for labor, materials, and equipment furnished for use in the performance of the City Contract, Public Safety Services Campus - Building Façade and Roof Improv. (PLA, OCIP), Phila, PA, for the Public Property Department, which is incorporated herein by reference.

    for the Procurement Department, which is incorporated herein by reference.

2.  With respect to the Authority, this obligation shall be null and void if the Contractor:

    a.  Promptly makes payment, directly or indirectly, for all sums due Claimants; and

    b.  Defends, indemnifies, and holds harmless the Authority from any claims, demands, liens, or suits by any person or entity whose claim, demand, lien, or suit is for the payment for labor, materials, or equipment furnished for use in the performance of the City Contract, provided the Authority has promptly notified the Contractor and the Surety (at the addresses described in Paragraph 10) of any such claims, demands, liens or suits and has tendered defense of such claims, demands, liens, or suits to the Contractor and the Surety.

3.  With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4.  In the event that the Contractor shall not make prompt payment to Claimants, the Surety's obligation to Claimants under this Payment Bond, and a Claimant's rights under this Payment Bond, shall be governed solely by the Public Works Contractors' Bond Law of 1967, 8 P.S. § 191, et seq.

5.  Amounts owed by the Authority to the Contractor under the City Contract shall be used for the performance of the City Contract and to satisfy claims, if any, under any Performance Bond. By the Contractor furnishing and the Authority accepting this Payment Bond, they agree that all funds earned by the Contractor in the performance of the City Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Payment Bond, subject, however, to the Authority's priority to use the funds for the completion of the work under the City Contract.

6.  The Surety shall not be liable to the Authority, Claimants, or others for obligations of the Contractor that are unrelated to the City Contract. The Authority shall not be liable for payment of any costs or expenses of any Claimant under this Payment Bond, and the Authority shall have under this Payment Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Payment Bond.

7.  The Surety hereby waives notice of any change or modification to the City Contract, including changes of time, or changes to related subcontracts, purchase orders, and other obligations.

8.  Any suit or action under this Payment Bond shall be commenced by a Claimant in accordance with the Public Works Contractors' Bond Law of 1967, 8 P.S. § 191, et seq., or any other applicable law.

9.  All notices to the Surety or the Contractor shall be mailed or delivered to the respective addresses shown on the signature page. In the event of a change in the address of the Surety or the Contractor, such party shall promptly provide notice to the Authority and the other party, with such notice to include the City Contract No. and this Performance Bond No.

10. When this Payment Bond has been furnished to the Authority in compliance with the Public Works Contractors' Bond Law of 1967, 8 P.S. § 191, et seq., any provision in this Payment Bond which conflicts with the statutory or

26-26 (Rev. 4/2003) Page 1

legal requirement of such statute shall be deemed deleted here from and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein.

11. Upon request by any person or entity appearing to be a potential beneficiary of this Payment Bond, the Contractor shall promptly furnish a copy of this Payment Bond or shall permit a copy to be made.

12. The law controlling the interpretation or enforcement of this Payment Bond shall be Pennsylvania law.

13. Definitions

    a. Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials, or equipment for use in the performance of the City Contract.

    b. City Contract: The agreement between the Authority and the Contractor identified on the front page, which shall encompass all Contract Documents, including the Bid, Bid Addenda, and Amendments to the City Contract, and any changes thereto.

    c. Labor, materials, or equipment: All labor supplied or performed, all materials furnished, all equipment or machinery rented, and all services rendered by public utilities in the performance of the work under the City Contract, whether or not such labor, material, equipment, machinery, or public utility services enter into and become component parts of the work or improvement contemplated by the City Contract, including, inter alia: (a) all material furnished, equipment or machinery rented, services rendered by public utilities, and labor supplied or performed in preparing the work site for the performance of the work covered by the City Contract; (b) all equipment, machinery, public utility services, labor, shoring, sheathing and blasting supplies, and other materials used on the work site in doing such excavating as may be necessary or required to institute or perform the work specified in the City Contract; (c) all water, gas, power, light, heat, oil, gasoline, telephone service, or rental equipment used in the City Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors; and (d) all material furnished, equipment or machinery rented, services rendered by public utilities, and labor supplied or performed in the performance of work or of maintenance required by or performed under the terms of the City Contract.

| CONTRACTOR AS PRINCIPAL:<br>D.A. Nolt, Inc. | SURETY:<br>North American Specialty Insurance Company |
|---|---|
| Signature: | Signature:<br>Attorney-In-Fact   William L. Rushton |
| Title:   Richard O'Brien<br>Vice President | (*Attach Power of Attorney) |
| Date:   August 28, 2015 | Date:   August 28, 2015 |
| Address:   53 Cross Keys Road<br>Berlin, NJ 08009 | Address:   1650 Market Street, 36th Floor<br>Philadelphia, PA 19103 |

(Corporate Seal)                                      (Surety Seal)

28-26 (Rev. 4/2003) Page 2