# RCC Fabricators, Inc.

# v.

# Umoja Erectors, LLC
# North American Specialty Insurance Company

# Expert Report

May 31, 2019

Prepared by:



**Capital Project Management, Inc. ®**

# RCC Fabricators, Inc.

## v.

# Umoja Erectors, LLC

# North American Specialty Insurance Company

# Expert Report

May 31, 2019

Prepared by:

## Capital Project Management, Inc.

Jesse R. Sloane, P.E.

Table of Contents

I.      Project Overview ...................................................................................................... 3

II.     Scope of Engagement ............................................................................................... 5

III.    Summary of Findings ............................................................................................... 6

IV.     CPMI Analysis ......................................................................................................... 7

   A.   RCC's contract with Umoja ..................................................................................... 7

   B.   Field verification of steel dimensions ..................................................................... 8

      1.   Umoja was responsible for field verification ....................................................... 8

      2.   Umoja's incorrect field verification ................................................................... 10

   C.   Quantification of damages ...................................................................................... 15

      1.   RCC billed 100% of its contract scope of work ................................................. 15

      2.   Additional charges for modification and refabrication of steel ........................... 16

   D.   Umoja's allegations against RCC ........................................................................... 17

      1.   Umoja's allegations of backcharges attributable to RCC ................................... 17

      2.   Umoja's allegations of delay ............................................................................. 18

## I.     Project Overview

In October 2015 the City of Philadelphia contracted with D. A. Nolt, Inc. (Nolt) for the design, demolition, remediation, renovation, and equipping of a project called the "Public Safety Services Campus-Building Facade and Roof Improvements" (the Project) (**Exhibit 1**).   Nolt subsequently entered into a subcontract agreement with Umoja Erectors, LLC (Umoja) for the supply, fabrication, erection, layout, coordination, and installation of all steel and associated hardware for the Project (**Exhibit 2).**  Umoja entered into a subcontract agreement with RCC Fabricators, Inc. (RCC) to supply fabricated steel to Umoja (**Exhibit 3**).   To date, RCC has provided all of the steel associated with its subcontract with Umoja, and invoiced Umoja for the full subcontract value of $209,805.

On March 17, 2017, RCC submitted a claim against Nolt's payment bond in the amount of $229,453.79 due to not having received any payment from Nolt or Umoja in relation to RCC's steel deliveries (**Exhibit 4**).  The total amount of RCC's claim reflected the base contract value, plus costs associated with directed extra work to remake and/or modify some steel pieces.

| Description | Amount |
|---|---|
| Base Contract | $209,805.00 |
| Remake WT pieces | $6,500.00 |
| Modify column 3C1 & beam 8B1 | $2,250.00 |
| Remake (2) 35B3 | $2,794.00 |
| Remake 11B1 end connection | $850.00 |
| Remake column 22C2 base plate | $1,250.00 |
| Remake screen wall | $7,525.00 |
| Coating credit | -$11,163.15 |
| Remake 33B2 | $1,590.00 |
| Remake 9B6-4C1 | $1,202.94 |
| Add stair extensions | $1,135.00 |
| Shoring post location calculations | $5,715.00 |
| **TOTAL** | **$229,453.79** |

3

On November 22, 2017, RCC filed a complaint against Umoja and Nolt's bonding company, North American Specialty Insurance Company (NASIC), for damages in the amount of $255,408.09 for RCC's unpaid contract balance, extra work, interest, and attorneys' fees.

In its answer with affirmative defenses, Umoja denied RCC's allegations and claimed that Umoja is entitled to deduct payments from RCC for late and non-compliant steel deliveries, and that RCC caused chargebacks and potential chargebacks from Nolt due to untimely and non-conforming deliveries.

**II.      Scope of Engagement**

Capital Project Management, Inc. (CPMI) was retained by RCC's legal counsel to assess whether RCC had fabricated and delivered the steel associated with the subcontract agreement between RCC and Umoja, to determine the appropriate damages associated with the RCC's scope of work for the Project, and to address Umoja's allegations of regarding delay and backcharges attributable to RCC.

Mr. Jesse Sloane, P.E., is responsible for the preparation of this report.  A copy of Mr. Sloane's Curriculum Vitae is attached (**CPMI Tab A**).

As part of this assignment, documentation available to CPMI included:

- Contract documents
- Change orders
- Payment applications and invoices
- Bid documents
- Proof of payment
- Drawings
- Shipping documentation
- Project correspondence
- Deposition transcripts
- Legal filings

The findings set forth in this report are based on the information that is currently available, and CPMI reserves the right to amend this report if new information later becomes available.

5

III.     **Summary of Findings**

CPMI's findings regarding RCC's fabrication and delivery of steel for the Project are:

- RCC is entitled to the full base contract value of $209,805.  RCC fabricated and delivered the steel associated with the Project and Umoja used the steel to perform its erection subcontract scope of work for the Project.

- Umoja was responsible for all field verification of steel dimensions.  RCC's quote, incorporated into its subcontract agreement with Umoja, specifically excluded field verification, while Umoja's subcontract agreement with Nolt specifically required that Umoja be responsible for verification of field dimensions of the steel.

- RCC is entitled to $19,648.79 for additional steel fabricated in excess of that required by its base subcontract agreement with Umoja.  The additional steel was required due to problems with the field verified dimensions performed by Umoja and used by RCC in the fabrication of the steel.

- Umoja has provided no evidence to support its allegations that backcharges should be applied to RCC's contract balance.  Umoja has also not quantified any amount of backcharges that Nolt has applied or may apply against Umoja, or the amount of any backcharges for which Umoja claims RCC is responsible.

- In attempting to assess delay damages, Umoja has not shown that it would not have been late for any other reason and that RCC was the sole cause of critical delay with any kind of critical path method (CPM) schedule analysis.  Without such, RCC cannot be held responsible or liable for any alleged delay-related costs within Umoja's or Nolt's scopes of work.

IV.   **CPMI Analysis**

A.   **RCC's contract with Umoja**

Umoja contracted with RCC for the fabrication and delivery of steel and related materials for the Project in accordance with RCC's July 28, 2016 bid.  The Project record shows that RCC fabricated and delivered steel to the Project site.  Furthermore, Umoja used the steel delivered by RCC to complete its subcontract scope of work.

First, RCC's bills of lading, which documented the steel deliveries, began on September 28, 2016, and continued through February 2017 (**Exhibit 5**).  Second, deposition testimony from both Umoja and Nolt representatives support the conclusion that not only did RCC fabricate and deliver the steel, but the steel was ultimately used in Umoja's execution of its subcontract with Nolt.

Alburn Brown, President of Umoja, admitted that RCC delivered steel to Umoja, and that the materials RCC delivered were used in the performance of the Project (**Exhibit 6, p. 51**).  Kevin Lumpkin, Umoja's former Superintendent and Safety Coordinator, also stated that the steel RCC delivered to the site was used in the performance of the Project:

> Q. Do you know whether there was any steel that RCC delivered that wasn't actually erected by Umoja?
> A. No.
> Q. Okay.  So everything that was delivered was used in some way and erected as part of the building?
> A. Yes.
> (**Exhibit 7, p. 31**)

Richard O'Brien, Vice President of Nolt, also confirmed that steel was delivered and used (**Exhibit 8, p. 36**).  Charles Knauff, Nolt's Project Manager, reviewed each of RCC's bid items, which constituted RCC's contract scope, and testified that they had been delivered and used (**Exhibit 9, p. 22-28**).  Both Mr. O'Brien and Mr. Knauff testified that some of the steel was

7

modified in order to be used for the Project.  Furthermore, there appears to be conflicting testimony

whether or not all of the steel was used.  Both of these issues appear to be related to problems with

some pieces of steel which were delivered to the site, but could not be installed.  As discussed

further below, these issues arose out of problems with Umoja's field verification of dimensions

prior to RCC's fabrication of the steel.

CPMI concludes that RCC fabricated and delivered the steel associated with the Project,

and that Umoja erected the steel for the Project.


**B.      Field verification of steel dimensions**

**1.      Umoja was responsible for field verification**

Umoja denied responsibility for incorrect field measurements, and instead incorrectly

alleged that RCC was responsible for the accuracy of field measurements.  RCC's bid to Umoja,

attached to the subcontract agreement between the parties, listed the following qualification:

> Survey of existing field conditions including, but not limited to, installed anchor
> bolts, steel framing, elevations, etc. to be provided by the GC prior to the
> preparation of shop drawings.
> (**Exhibit 3**)

RCC's bid also listed "Field Measurements" as an exclusion, meaning that it was outside the scope

of RCC's bid.  Exhibit A of Umoja's subcontract with Nolt also specified that Umoja would be

responsible for verification of field dimensions:

> c. ***Subcontractor shall*** coordinate all steel fabrication and erection work, and ***be
> responsible for*** layout and ***verification of field dimensions prior to fabrication***.
> (**Exhibit 2**) [Emphasis added.]

RCC requested field verification of dimensions as early as July 26, 2016 in a series of

Requests for Information (RFIs) (**Exhibit 10, Exhibit 11, and Exhibit 12**).  On September 20,

2016, RCC provided a summary of items to be field verified to both Nolt and Umoja.  However,

Umoja's president, Alburn Brown, showed resistance to Umoja performing its contractual obligation for verification of field dimensions when he stated, "**It is not my responsibility to survey the job**… it is the fabricators [sic] responsibility to make sure he delivers the correct steel to the site" (**Exhibit 13**) [Emphasis in original.].

After Nolt reminded Umoja that they were being paid a "lump sum premium to coordinate all this work," Umoja relented and confirmed the field dimensions:

> Kevin Lumpkin of Umoja Erectors has completed the field verification that was requested on the shop drawings furnished by RCC Fab.
> **Kevin confirms that dimensions on column center lines are OK as shown.**
> **Kevin confirms that inside of beam to beam or joist to joist dimensions are OK as shown.**
> Please refer to control drawings/contract for any equipment openings or any other dimensioning that is required other than what is confirmed above and outside our responsibility and control.
> (**Exhibit 13**) [Emphasis in original.]

At his deposition, Nolt's Project Manager, Charles Knauff, confirmed that Umoja was responsible for field verification of steel dimensions (**Exhibit 9, p. 26**). Similarly, Richard O'Brian confirmed that Umoja was specifically paid for assuming the responsibility of field verification:

> Q. *Do you know whether or not D.A. Nolt's contract with Umoja for managing the steel installation*, whether that contract *would have included the responsibility of field verifying shop drawings?*
> A. *Yes, it would.*
> MR. WINDISH: Object to the form. You can answer.
> A. Yes, it would have. From D.A. Nolt's perspective, I really didn't care what went on with that meeting in the field between Umoja and RCC because our position was, and our contract stated, that that was ultimately -- *I was ultimately looking at Umoja to take on that responsibility. We paid them a fee to do that.*
> Q. And that was because -- do you know whether or not that was because the responsibility for them to field verify was included in your contract specifically?
> A. Yes, *it was included in the contract.* Like I said earlier, *we wanted one party to be responsible for all the work related to the steel, whether it was installation or fabrication, and paid a fee and included that in the subcontract agreement accordingly.*
> (**Exhibit 8, p. 34-35**) [Emphasis added.]

9

CPMI concludes that Umoja, not RCC, was responsible for field verification of dimensions due to the subcontract agreement between Umoja and Nolt, the exclusion of field verification in RCC's bid to Umoja, and deposition testimony from Nolt representatives.  CPMI also concludes that Umoja performed field verification of dimensions in support of RCC's steel fabrication.

### 2.      Umoja's incorrect field verification

Umoja alleges that RCC delivered steel material which was out of specification with respect to the shop drawings.  Umoja fails to recognize its own responsibility for the errors in fabrication.  As identified above, Umoja, not RCC, was responsible for and performed field verification of steel dimensions prior to RCC's fabrication.  However, due to errors and/or omissions related to Umoja's incorrect field verifications, RCC was required to refabricate or modify some of the steel pieces.

CPMI's review of the Project record indicates that these isolated instances where steel pieces could not be used as originally fabricated were due to existing field conditions, which should have been addressed as part of Umoja's contractually required verification of field dimensions. For example, a November 22, 2016 email exchange between Nolt and Ballinger captured problems with screen wall framing which resulted in the delivery of a piece of steel eight inches shorter than needed compared to the existing field conditions (**Exhibit 14**).  In his deposition, Umoja's Kevin Lumpkin explained the cause of the discrepancy, exonerating RCC.

> Q. The second sentence of that email, it's not addressed to you, I'm just using it to refresh your recollection.
> He says, "How was it determined that the screen wall framing along the south face was going to miss the existing column to the north by eight inches?  I was doublechecking our subcontractors VIF dimensions and found the eight inches bust when comparing the contract CP drawing with the steel shop drawings.  The steel shops were provided using the same dimensions shown in the CP drawing which is eight inches different than what was actually there."

10

Do you know the issue he's referring to there?

A. Yes.

Q. All right.  Can you tell us what that is?

A. Well, what he's referring to is the measurement that he had downstairs from the column align matches what they had on that drawing, and he's trying to figure out why it didn't it match when it came up top on the roof and they opened up the limestone.

Q. *Can you explain why there's an eight-inch difference there?*

A. *Yes.  When they opened up the limestone, there was a smaller beam column there instead of a concrete column.*

Q. And the limestone, what do you mean limestone, the roof?

A. The roof.

Q. All right.

A. On the south side.

Q. *You opened up the limestone roof and there was a smaller beam there than was specified in the contract documents?*

A. *Yes.*

Q. All right.  It says here that steel shop drawings were provided using the same dimensions in the contract drawings, correct, is that what that phrase is there?

A. Yes.

Q. All right.  *Was there any way to field verify or test these measurements without removing the limestone?*

A. *No, you had to remove the limestone.*

Q. *So this, this would be what they call a different site condition in that the condition that existed on site was different than what the contract drawings showed?*

A. *Yes.*

Q. Okay.  Do you know how this issue was eventually resolved?

A. Yes.

Q. And how was it resolved?

A. They came in with an RFI, and the engineer of record approved the RFI.

Q. And what was the actual fix in the field?

A. We had to weld stiffener plates in the column that was there behind the limestone, and we had to add a piece onto the galvanized steel to make the connection.

(**Exhibit 7, p. 66-68**) [Emphasis added.]

The delivered steel did not meet the needed field dimensions due to an unknown or changed condition which had not been addressed through Umoja's field verifications prior to RCC fabrication of the steel.  Therefore, RCC is not responsible for any costs incurred as a result of the dimensional discrepancy.

A similar instance occurred in November 2016 when a steel beam was fabricated to a length incompatible with the existing field conditions at the time of installation (**Exhibit 15**).  In his deposition, Umoja's president, Alburn Brown similarly explained the discrepancy.

> Q. Okay.  Does this reference an issue with differing site conditions that, need one of the beams that RCC provided six inches short of existing steel column?
> Does that sum up what the issue was?
> A. No.  ***It was a masonry column that was field verified, and when we brought the steel out to install it, the beam was too long to connect to the column because there was brick face in front of the masonry column that showed on the contract drawings.***
> ***And then D.A. Nolt demoed the brick face away from the existing masonry column, and found it to have actually a steel column instead that was not shown on the contract drawings.***
> (**Exhibit 6, p. 105-106**) [Emphasis added.]

The fabricated steel did not meet the necessary field dimensions due to a changed field condition which was not identified through Umoja's field verifications prior to RCC fabrication of the steel. Therefore, RCC is not responsible for any costs incurred as a result of the discrepancy.

Additionally, CPMI identified at least six different requests for information (RFIs) from RCC where the steel could not be used as intended due to existing field conditions (**Exhibits 16 to 21**).  RFI responses from the City of Philadelphia indicate that on at least two occasions, a change was warranted "due to field verified conditions" (**Exhibit 22 and Exhibit 23**).  This is further supported by RCC's January 4, 2017 letter to Umoja, wherein RCC identified six RFIs, three of which noted that the conditions were a result of incorrect field information provided to RCC (**Exhibit 24**).  Because Umoja was contractually responsible for verification of field dimensions, and Umoja performed incorrect or incomplete field verifications, Umoja is responsible for the resultant steel tolerance conflicts.

Meeting minutes from March 24, 2017 confirm problems with Umoja's field verified dimensions.  At the meeting, Umoja admitted to field measurement problems, but alleged that the

12

reason for the steel errors was due to changes to the existing building structure after field measurements were taken:

> Al Brown, representative for Umoja Erectors noted that issues associated with the fabrication arose on the project on the day that fabrication was delivered to the project.
>
> Al noted that field measurements were taken, but ***subsequent changes to the structure noting that an encased steel column was not evident at the time of the prefabrication measurements being taken***. ***The subsequent measurements were off and this has caused a substantial delay in the delivery of fabrication and the completion of the job.*** Mr. Brown noted that he is working on a time and material basis and that at this point he has approximately one to two weeks work left. He is anticipating the correct fabrication shortly so that he may complete all aspects of his project.
>
> D.A. Nolt representative, Rich O'Brien recognized the fact that some of the fabrication was incorrect, but also understood it was the responsibility of this contractor to verify all measurements prior to the initiation of fabrication so that once the materials were delivered they could be properly installed. D.A. Nolt is recognizing that some of the issues associated with Umoja's installation have resulted in a delay in the completion of the project. Please note that the project was due for completion December 16, 2016. The project's prime contractors may be subject to a $10,000 per day liquidated damages charge.
> (**Exhibit 25**) [Emphasis added.]

RCC was only responsible for supplying the steel and fabricating in accordance with the approved drawings and the field verified dimensions. RCC was not responsible for any changes to the existing structure which would result in incorrect or inaccurate field verified dimensions. Umoja, the subcontractor onsite responsible for coordinating the steel, was responsible for accounting for changes to the existing structure. This was confirmed in the deposition of Charles Knauff, who testified that it was Umoja who was responsible for any errors and/or omissions associated with field verification of dimensions:

> Q. ***And do you know whether or not Umoja did fulfill that obligation and verify the field drawings?***
> A. ***They did not.***
> Q. To your knowledge did Umoja do any field measuring of the approved shop drawings?

A. I believe they did.
Q. But to your knowledge it was not a complete field verification?
A. Yes.
…
Q. It is possible that some or all of those materials that were delivered that did not fit could have been exactly as described in the owner approved shop drawings?
A. Yeah, that's a stretch, though. Had they been field verified it would not have been a problem.
Q. *And the field verification was lacking in this case?*
A. *Right. It did not happen.*
(**Exhibit 9, p. 17, 20**) [Emphasis added.]

Umoja also alleges that "much of the [steel] material was not according to the specifications or did not suit the measurements at the site and had to be redone by RCC."  In its supplemental answers to RCC's interrogatory, Umoja listed 32 pieces of penthouse steel, fifth floor steel, and screen wall steel to support its allegations.  However, Umoja has not provided any evidence to support its allegations that actions or inactions by RCC caused any delays or impacts to Umoja's or Nolt's performance on the Project.  Furthermore, as discussed in more detail below, CPMI identified only 12 pieces of steel which were refabricated and delivered to the project site, compared to over 400 pieces of steel which RCC delivered in the completion of its subcontract scope of work.  These refabricated pieces represent less than 3% of the steel pieces delivered by RCC to the Project.

CPMI concludes that Umoja was responsible for any errors or omissions related to field verification of steel dimensions which subsequently required rework or refabrication of steel components supplied by RCC.  CPMI also concludes that Umoja has not provided any evidence to support its allegations that any specific steel pieces had to be done by RCC as a result of RCC's own actions or inactions.

### C.      Quantification of damages

#### 1.      RCC billed 100% of its contract scope of work

The Project record indicates that RCC invoiced Umoja for the full contract value of $209,805 for the fabrication and delivery of steel.  RCC's first invoice for steel fabrication through October 30, 2016 billed Umoja for $136,373.25, which was in relation to 65% of the steel set forth in the RCC-Umoja subcontract (**Exhibit 26**).  Umoja, in turn, submitted invoice AFP #1 in the amount of $151,002 to Nolt on December 28, 2016, which included a continuation sheet listing the exact amount RCC had invoiced (**Exhibit 27**).  Nolt issued payment to Umoja and RCC for approximately 50% of this amount ($66,238.50), with the remaining balance placed into escrow (**Exhibit 28**).  However, Umoja's invoice records indicate that the payment to RCC was later cancelled, meaning that RCC never received any portion of these funds (**Exhibit 29 and Exhibit 30**).

RCC's second invoice for steel fabrication, through November 30, 2016, billed Umoja for an additional $62,270.12 in connection with an additional 30% (approximately) of the Project steel set forth in the RCC-Umoja subcontract (**Exhibit 31**).  Umoja, in turn, submitted invoice AFP #2 in the amount of $69,055 to Nolt on January 20, 2017, which included a continuation sheet listing the exact amount RCC had invoiced (**Exhibit 32**).

RCC's third invoice for the balance of the steel billed $11,161.63, which represented all of the remaining steel set forth in the RCC-Umoja subcontract (**Exhibit 33**).  CPMI did not find any evidence in Umoja's invoice records that Umoja billed Nolt for the balance of RCC's steel fabrication.  Furthermore, CPMI found no record of payment regarding RCC's latter two invoices. RCC has not received any payment from Umoja or Nolt for its base contract scope of work, despite all steel having been delivered to the Project, and used.

CPMI concludes that because RCC fabricated and delivered steel for the Project, and the steel was used for the Project, RCC is due the full contract value of $209,805.

### 2.      Additional charges for modification and refabrication of steel

RCC's claim includes $19,648.79 in costs associated with the refabrication of steel, modification of steel, additional pieces of steel, and additional engineering efforts related to steel fabrication, as identified below:

| Description | Amount |
|---|---|
| Remake WT pieces | $6,500.00 |
| Modify column 3C1 & beam 8B1 | $2,250.00 |
| Remake (2) 35B3 | $2,794.00 |
| Remake 11B1 end connection | $850.00 |
| Remake column 22C2 base plate | $1,250.00 |
| Remake screen wall | $7,525.00 |
| Coating credit | -$11,163.15 |
| Remake 33B2 | $1,590.00 |
| Remake 9B6-4C1 | $1,202.94 |
| Add stair extensions | $1,135.00 |
| Shoring post location calculations | $5,715.00 |
| **TOTAL** | **$19,648.79** |

CPMI reviewed RCC's bills of lading to assess whether or not shipments of refabricated steel were made.  Some of the steel listed above was required as additional pieces to address fitup problems due to differences between the Umoja-provided field measurements and the existing field conditions.  For example, RCC delivered steel pieces 9B6 and 4C1 to the Project on November 1, 2016 (**Exhibit 34**).  Subsequently, RCC submitted RFI 16 on December 27, 2016 to address a gap between the two steel pieces due to existing field conditions (**Exhibit 21**).  In addition to noting that modification of the steel was required "due to field verified conditions," the January 18, 2017 reply also directed an additional 10" x 10" x ¾" cap plate be used (**Exhibit 23**).  RCC fabricated and shipped this additional piece of steel on January 26, 2017 (**Exhibit 35**).

16

While some of the pieces required modifications at the Project site or refabrication of connection pieces only, others required refabrication of the original steel piece.  For example, on October 12, 2016, nine pieces of steel were shipped with identifiers 38B7, 39B8, or 30B2 (**Exhibit 36**).  Four pieces with the same identifiers were shipped again on October 25, 2016, but the bill of lading noted they were modified pieces (**Exhibit 37**).

CPMI notes that RCC delivered over 400 pieces of steel, as well as over 4,500 pieces of hardware (e.g., bolts, nuts, washers, etc.), in accordance with its subcontract agreement with Umoja.  CPMI identified only 12 pieces of steel which were refabricated and delivered to the Project, or less than 3% of the contracted steel.

CPMI concludes that RCC is entitled to $19,648.79 for the additional steel fabricated and delivered in excess of that required by its base subcontract agreement with Umoja.

## D.      Umoja's allegations against RCC

### 1.      Umoja's allegations of backcharges attributable to RCC

Umoja incorrectly alleges that RCC caused chargebacks and potential chargebacks from Nolt.  In its February 10, 2017 letter to Umoja, Nolt stated that it would not pay Umoja for rework caused by fabrication or erection errors, and that costs incurred by Nolt as a result of rework may be backcharges to Umoja (**Exhibit 28**).  Nolt reiterated this position in its February 21, 2017 letter to Umoja, further noting that no further payments would be made to Umoja until all of the steel issues on the Project were resolved (**Exhibit 38**).  As discussed above, errors and/or omissions related to Umoja's field verification of dimensions caused rework of RCC's steel fabrication.

In its March 31, 2017 letter to Umoja, Nolt detailed backcharges totaling $97,654.86 for labor and material associated with alleged rework and repairs (**Exhibit 39**).  Umoja has offered no

evidence to support its allegation that any of these backcharges should be applied against RCC's contract balance due to RCC's own errors, and not Umoja's failures regarding field verification of dimensions.

CPMI concludes that Umoja has not supported any backcharges. Umoja has not quantified the total amount of backcharges that Nolt has applied against Umoja, has not quantified the total amount of backcharges for which Umoja claims RCC is responsible, and has provided no evidence to support its allegations that backcharges should be applied to RCC's contract balance.

### 2.      Umoja's allegations of delay

Umoja alleges that RCC caused chargebacks from Nolt due to untimely deliveries. However, CPMI has not found any evidence in the Project record to support Umoja's allegations. Furthermore, Umoja has not identified whether RCC's alleged untimely deliveries caused any delays to the completion of Umoja's work. Despite the allegations of RCC-caused delay, Umoja has not shown that it would not have been late for any other reason and that RCC was the sole cause of critical delay with any kind of critical path method (CPM) schedule analysis. Without such, RCC should not be held liable for alleged delay-related costs to Umoja's or Nolt's scopes of work.

In the absence of a CPM analysis to demonstrate critical delay, RCC should not be held liable for alleged delay-related costs to Umoja's or Nolt's scopes of work. Umoja has not provided any such CPM analysis to support its allegations that it was impacted by late delivery of steel. Umoja has also not provided a CPM schedule analysis to substantiate and quantify delays alleged against RCC.