UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RCC FABRICATORS, INC.<br><br>    Plaintiff<br><br>vs.<br><br>UMOJA ERECTORS LLC and NORTH AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>    Defendants | CIVIL ACTION NO. 2:17-cv-05304-TR |

**ORDER**

AND NOW, this _____ day of _____, 2021, upon consideration of the Plaintiff, RCC Fabricators, Inc.'s Motion in Limine to Preclude Evidence of any Scheduling Delays Allegedly Caused by RCC Fabricators, Inc., it is hereby ORDERED and DECREED that the said Motion is granted.

BY THE COURT:

_____
**TIMOTHY R. RICE, U.S.M.J.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RCC FABRICATORS, INC.<br><br>    Plaintiff<br><br>vs.<br><br>UMOJA ERECTORS LLC and NORTH AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>    Defendants | CIVIL ACTION NO. 2:17-cv-05304-TR |

**MOTION IN LIMINE TO PRECLUDE EVIDENCE OF ANY SCHEDULING DELAYS ALLEGEDLY CAUSED BY RCC FABRICATORS, INC.**

Plaintiff, RCC Fabricators, Inc. ("RCC"), by its undersigned counsel, moves for an order to preclude evidence of any scheduling delays allegedly caused by RCC in connection with the above-captioned action. In support of this motion, RCC relies upon and incorporate the supporting Memorandum of Law and Certification of Patrick J. Hughes in support of Motion in Limine to Preclude Evidence.

                Respectfully submitted,

                **CONNELL FOLEY LLP**

                s/ *Patrick J. Hughes*
                Patrick J. Hughes (I.D. No. 41403)
                457 Haddonfield Road – Suite 230
                Cherry Hill, NJ 08002
                Ph: 856-317-7100
                e-mail: phughes@connellfoley.com

Dated: March 30, 2021        *Counsel for Plaintiff, RCC Fabricators, Inc.*

5867329-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RCC FABRICATORS, INC.<br><br>    Plaintiff<br><br>vs.<br><br>UMOJA ERECTORS LLC and NORTH AMERICAN SPECIALTY INSURANCE COMPANY<br><br>    Defendants | CIVIL ACTION NO. 2:17-cv-05304-TR |

**PLAINTIFF RCC FABRICATORS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE EVIDENCE OF ANY SCHEDULING ISSUES ALLEGEDLY CAUSED BY RCC FABRICATORS, INC.**

**CONNELL FOLEY LLP**
Patrick J. Hughes, Esquire (I.D. No. 41403)
457 Haddonfield Road – Suite 230
Cherry Hill, NJ 08002
Ph: (856) 317-7100
e-mail: phughes@connellfoley.com

*Counsel for Plaintiff, RCC Fabricators, Inc.*

5863502-1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................................ 1

    A.   The Prime Subcontract and the RCC Subcontract Make Clear that Umoja is the Party Responsible for Field Verifying the Dimensions of the Steel Materials for RCC to Fabricate. .................................................................... 2

    B.   Umoja Confirmed that They Field Verified the Dimensions of the Steel Materials for RCC to Fabricate. ........................................................................ 3

    C.   Umoja Incorrectly Field Verified Some of the Dimensions of the Materials that RCC was to Fabricate. ............................................................................... 4

    D.   RCC Delivered the Steel Materials in Accordance with the Terms of the RCC Subcontract, and Those Materials Were Used in Performance of the Project. ............. 5

    E.   RCC's Claim on the Bond Against NASIC ..................................................... 5

    F.   No Scheduling Delays Were Caused by RCC's Conduct ............................... 6

III. LEGAL ARGUMENT .................................................................................................... 8

    A.   Defendants Should Be Barred From Introducing at Trial any Evidence of Any Scheduling Issues Allegedly Caused by RCC ..................................... 8

IV.  CONCLUSION ............................................................................................................... 9

## TABLE OF AUTHORITIES

*Cases*

*A.G. Cullen Constr., Inc. v. State Sys. Higher Educ.*, 898 A.2d 1145, 1160
    (Pa. Comwlth. 2006)..................................................................................................8

*Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011).......................9

*D.A. Nolt, Inc. v. PMA, et al.*, Civil Action No. 18-4997, Eastern District
    of Pennsylvania.........................................................................................................8

*Delahanty v. First Pa. Bank, N.A.*, 318 Pa. Super. 90, (Pa. Super. 1983).......................9

*John Spearly Constr., Inc. v. Penns Valley Area Sch. Dist.*, 121 A.3d 593,
    602 (Pa. Comwlth. 2015)..........................................................................................8

*McShea v. City of Philadelphia*, 606 Pa. 88, 97 (2010)....................................................9

*Seaway Painting, Inc. v. D.L. Smith Co.*, 242 B.R. 834, 842 (E.D. Pa.
    1999).........................................................................................................................9

*Vern's Elec., Inc. v. Mount Leb. Sch. Dist.*, 2008 Pa. Commw. Unpub.
    LEXIS 69, *24, 2008 WL 9398643 (Pa. Comwlth. Sept. 12, 2008)..........................8

*Wayne Knorr, Inc. v. DOT*, 973 A.2d 1061, 1081 (Pa. Cmwlth. 2009) .........................9

Plaintiff RCC Fabricators, Inc. ("RCC") hereby submits this memorandum of law in support of its motion in limine to preclude Defendants from entering into evidence any scheduling issues allegedly caused by RCC.

## I.  PRELIMINARY STATEMENT

RCC seeks long overdue compensation for supplying fabricated steel and related materials it delivered from September 2016 through February 2017 along with statutory interest, penalties and attorneys' fees and costs. To date, RCC has not received any monies for the materials it supplied despite the fact that RCC's steel was used in the Project at issue.

Defendants contend that they are not responsible for the amounts owed because they should be offset by backcharges or damages relating to scheduling issues allegedly caused by RCC's conduct. Yet, Defendants have offered no evidence of the alleged extent of any delay, that any delay was caused solely by RCC's conduct or that any delay caused specific, quantifiable damage to Defendants. Rather, the only expert on damages and causation is RCC's expert, and his unrefuted opinion showing no defendant even attempted a critical path analysis and concluding that RCC's conduct did not result in any backcharges or damages relating to scheduling issues.

In order to be entitled to delay damages, a contractor must establish the extent of the delay, responsibility for delay, and the damages related to the delay. Defendants have produced no such evidence during discovery and thus, they should be barred from producing any such evidence at trial.

## II.  STATEMENT OF FACTS

RCC's Complaint arises from a general contractor agreement between non-parties D.A. Nolt, Inc. ("Nolt") and the Philadelphia Municipal Authority ("the PMA") for the design, demolition, remediation, renovation, and equipping of the Project, specifically called the "Public

1

5863502-1

Safety Services Campus - Building Facade and Roof Improvement Project," Project No. 11-13-4108-01 (the "Project"). (*See* Ex. A to Certification of Patrick J. Hughes, hereinafter "Hughes Cert.").

In connection with the Project, Nolt executed a payment bond (the "Bond") with Defendant North American Specialty Insurance Company ("NASIC") (Bond No. 2195249) in the amount of $14,821,198.72. (*Id.* Ex. B). Also, with respect to the Project, Nolt entered into a subcontract with Defendant Umoja Erectors LLC ("Umoja") regarding the erection of steel on the Project ("the Prime Subcontract") and Umoja entered into a subcontract with RCC whereby RCC would be paid to furnish (but not erect) all of the fabricated steel and related materials to Umoja ("the RCC Subcontract"). (*Id.* Exs. C & D).

To date, RCC has provided all of the steel associated with the RCC Subcontract, and timely invoiced Umoja for the full subcontract value of $209,805 along with $19,648.79 for additional steel that RCC fabricated and was used in excess of the contract amount. (*Id.* Ex. E). On March 17, 2017, RCC submitted a claim to NASIC against the Bond, through D.A. Nolt, in the amount of $229,453.79 because RCC had not received any payment from Nolt or Umoja in relation to RCC's steel deliveries. (*Id.* Ex. F).

    **A.**    **The Prime Subcontract and the RCC Subcontract Make Clear that Umoja is the Party Responsible for Field Verifying the Dimensions of the Steel Materials for RCC to Fabricate.**

Any scheduling issues were not caused by RCC, but rather by Umoja's failure to verify the field dimensions or existing field conditions. Significantly, in the Honorable Linda K. Caracappa's prior order on RCC's motion for summary judgment, she stated in part, "there does not appear to be any dispute that responsibility and failures regarding necessary field dimensions are not attributable to plaintiff here based on the documents reviewed." (ECF Doc. 42, at fn.1). Rather, it is clear that Umoja was contractually responsible for field verifying the dimensions of

2

5863502-1

the steel materials set forth in the RCC Subcontract. RCC's bid to Umoja, which was attached to the RCC Subcontract, listed the following qualification:

> Survey of existing field conditions including, but not limited to, installed anchor bolts, steel framing, elevations, etc. to be provided by the GC prior to the preparation of shop drawings.

(Hughes Cert., Ex. D, at p.11). RCC's bid also listed "Field Measurements" as an exclusion, meaning that it was outside the scope of RCC's bid. (*Id.*). Further, the Prime Subcontract between Nolt and Umoja specified that Umoja would be responsible for verification of field dimensions:

> c. ***Subcontractor shall*** coordinate all steel fabrication and erection work, and ***be responsible for*** layout and ***verification of field dimensions prior to fabrication***.

(*Id.* Ex. C) (emphasis added). Nolt admits that Umoja was responsible for verifying field dimensions. (*Id.* Ex. G, Deposition Transcript of Richard O'Brien, at T.34:10-35:5).

    **B.**    **Umoja Confirmed that They Field Verified the Dimensions of the Steel Materials for RCC to Fabricate.**

RCC requested field verification of dimensions as early as July 26, 2016 in a series of Requests for Information ("RFI"). (*Id.* Ex. H). On September 20, 2016, RCC provided a summary of items to be field verified to both Nolt and Umoja. (*Id.* Ex. I, at p.5). However, Umoja's president, Alburn Brown, initially showed resistance to Umoja performing its contractual obligation for verification of field dimensions when he stated, "**It is not my responsibility to survey the job**... it is the fabricators [sic] responsibility to make sure he delivers the correct steel to the site." (*Id.* Ex. I, at pp. 1-2). Only after Nolt reminded Umoja that they were being paid a "lump sum premium to coordinate all this work," Umoja relented and confirmed the field dimensions. (*Id.* Ex. I, at p.1).

3

5863502-1

### C.     Umoja Incorrectly Field Verified Some of the Dimensions of the Materials that RCC was to Fabricate.

Due to errors and/or omissions by Umoja related to incorrect field verifications or existing field conditions, RCC was required to modify less than three percent (3%) of the steel pieces that it delivered to Umoja for use in the Project. These instances where certain steel pieces could not be used as originally fabricated were due to existing field conditions, which should have been addressed as part of Umoja's contractually required verification of field dimensions. (*Id.* Ex. J, at p.10). RCC submitted at least six different requests for information where the steel it delivered could not be used as intended due to existing field conditions. (*Id.* Ex. K). RFI responses from the City of Philadelphia indicate that on at least two occasions a change was warranted "due to field verified conditions." (*Id.* Ex. L).

Meeting minutes from March 24, 2017 confirmed problems with Umoja's field verified dimensions. At the meeting, Umoja admitted to field measurement problems, but alleged that the reason for the steel errors was due to changes to the existing building structure after field measurements were taken. (*Id.* Ex. M).

RCC was only responsible for supplying the steel and fabricating in accordance with the approved drawings and the field verified dimensions. (*Id.* Ex. J, at p.13). RCC was not responsible for any changes to the existing structure, which would result in incorrect or inaccurate field verified dimensions. (*Id.* Ex. J, at p.13). Umoja, the subcontractor onsite responsible for coordinating the steel, was responsible for accounting for changes to the existing structure. (*Id.* Ex. J, at p.13 and Ex. N). Nolt has admitted that Umoja was responsible for any errors and/or omissions associated with field verification of dimensions. (*Id.* Ex. N, Deposition Transcript of Charles Knauff, at T.17:15-20:17).

D.  **RCC Delivered the Steel Materials in Accordance with the Terms of the RCC Subcontract, and Those Materials Were Used in Performance of the Project.**

RCC's bills of lading, which documented RCC's steel deliveries to Umoja in accordance with the RCC Subcontract, began on September 28, 2016, and continued through December 13, 2016 for the fabricated steel, with deliveries of modifications due to actual field conditions occurring in January and February 2017. (*Id.* Ex. O). Deposition testimony from Umoja and Nolt's 30(b)(6) witnesses supports the conclusion that not only did RCC fabricate and deliver the steel pursuant to the terms of the RCC Subcontract, but that the steel was ultimately used by Umoja in furtherance of the Prime Subcontract with Nolt. (*Id.* Ex. P, Deposition Transcript of Alburn Brown (Umoja), at T.51:2-11; and Ex. Q, Deposition Transcript of Kevin Lumpkin (Umoja), at T.31:11-18).

E.  **RCC's Claim on the Bond Against NASIC**

On March 17, 2017, RCC submitted a claim against Nolt's Bond in the amount of $229,453.79, due to not having received any payment from Nolt or Umoja in relation to RCC's steel deliveries. (*Id.* Ex. F). The total amount of RCC's claim reflected the base contract value, costs associated with the refabrication of steel, modification of steel, additional pieces of steel, and additional engineering efforts related to steel fabrication.

Nolt has made payment for RCC's work, yet RCC has not received any funds. Specifically, on February 9, 2017, Nolt paid Umoja $151,002.00, which included payment for RCC's first invoice totaling $136,373.25. (*Id.* Ex. R). Nolt received payment from PMA, issued a check jointly payable to Umoja and RCC in the amount of $66,238.50 and rather than pay RCC the remainder that was due, placed $75,501 into an escrow account. Umoja retained and still has the over four (4) year old check and never cashed it or paid RCC and the $75,501

5

5863502-1

remains in escrow account. (*Id.* Ex. P Deposition Transcript of Alburn Brown (Umoja), at T.58:12-59:4 and T.62:8-17).

In addition, on February 9, 2017, after Nolt received payment from PMA, Nolt placed in escrow four additional payments in the amounts of $36,515.28, $31,104, $20,083.20 and $15,243.20. (*Id.* Ex. S). Thus, Nolt has received payments from PMA and there remains in escrow a total of $178,446.68, in addition to the $66,238.50 check. Therefore, there are total available funds, adding the check and escrow amounts, to pay RCC amounting to $244,685.18.

### F. No Scheduling Delays Were Caused by RCC's Conduct

The Defendants claim there were scheduling delays caused by RCC's deliveries of fabricated steel and related materials. Yet, remarkably, the Defendants have offered no critical path method ("CPM") analysis, engineering analysis or expert report, evidencing any schedule related costs or backcharges incurred by Umoja or Nolt as a result of RCC's performance under the Subcontract. In fact, RCC retained the sole expert in this case and its expert findings are uncontroverted. (*Id.* Ex. J). RCC's expert, Jesse R. Sloane, P.E., made several important findings including the following:

- RCC is entitled to the full base contract value of $209,805. RCC fabricated and delivered the steel associated with the Project and Umoja used the steel to perform its erection subcontract scope of work for the Project.

- Umoja was responsible for all field verification of steel dimensions. RCC's quote, incorporated into its subcontract agreement with Umoja, specifically excluded field verification, while Umoja's subcontract

6

5863502-1

agreement with Nolt specifically required that Umoja be responsible for verification of field dimensions of the steel.

- RCC is entitled to $19,648.79 for additional steel fabricated in excess of that required by its base subcontract agreement with Umoja. The additional steel was required due to problems with the field verified dimensions performed by Umoja and used by RCC in the fabrication of the steel.

- Umoja has provided no evidence to support its allegations that backcharges should be applied to RCC's contract balance. Umoja has also not quantified any amount of backcharges that Nolt has applied or may apply against Umoja, or the amount of any backcharges for which Umoja claims RCC is responsible.

- In attempting to assess delay damages, Umoja has not shown that it would not have been late for any other reason and that RCC was the sole cause of critical delay with any kind of critical path method (CPM) schedule analysis. Without such, RCC cannot be held responsible or liable for any alleged delay-related costs within Umoja's or Nolt's scopes of work.

(*Id.* at p. 6). These findings are uncontroverted by any analysis, expert or engineering report or other evidence. Defendants have utterly failed to demonstrate that RCC's work caused any scheduling issues which resulted in damages or backcharges.

Significantly, Defendants previously claimed that they would not pay RCC the monies it was owed because they may be subject to liquidated damages from PMA in a suit filed by Nolt

7

5863502-1

against the PMA and the City of Philadelphia. In that case, *D.A. Nolt, Inc. v. PMA, et al.*, Civil Action No. 18-4997, Eastern District of Pennsylvania, PMA and the City filed a counterclaim against Nolt for liquidated damages under the contract, however, those claims were dismissed with prejudice by Order issued by the Honorable Gene E.K. Pratter, U.S.D.J., on May 28, 2020. (*Id.* Ex. T). Thus, the Defendants' argument that they might be subject to liquidated damages lacks any merit.

### III. LEGAL ARGUMENT

#### A. Defendants Should Be Barred From Introducing at Trial any Evidence of Any Scheduling Issues Allegedly Caused by RCC

In order to recover damages for an alleged scheduling issue, a contractor must establish: (1) the extent of the delay with a reasonable degree of accuracy; (2) that the delay was caused solely by the other party's actions; and (3) that the delay caused specific and quantifiable injury to the contractor. *A.G. Cullen Constr., Inc. v. State Sys. Higher Educ.*, 898 A.2d 1145, 1160 (Pa. Comwlth. 2006); *John Spearly Constr., Inc. v. Penns Valley Area Sch. Dist.*, 121 A.3d 593, 602 (Pa. Comwlth. 2015) ("To establish delay damages, a contractor must establish the extent of the delay, responsibility for delay, and the damages related to the delay."); *Vern's Elec., Inc. v. Mount Leb. Sch. Dist.*, 2008 Pa. Commw. Unpub. LEXIS 69, *24, 2008 WL 9398643 (Pa. Comwlth. Sept. 12, 2008); *Seaway Painting, Inc. v. D.L. Smith Co.*, 242 B.R. 834, 842 (E.D. Pa. 1999) ("Where a contractor is delayed by another party in the timely performance of his contract, the contractor may recover damages for the costs associated with that delay.").

Similarly, for the Defendants to show that RCC breached its contract, they must prove: "(1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011). *See also McShea v. City of Philadelphia*, 606 Pa. 88, 97 (2010)

Further, while "Pennsylvania law does not require proof of damages to a mathematical certainty," to prove damages, a party "must present sufficient evidence for the fact-finder to make an intelligent estimation, without conjecture, of the amount to be awarded." *Wayne Knorr, Inc. v. DOT*, 973 A.2d 1061, 1081 (Pa. Cmwlth. 2009). *See also Delahanty v. First Pa. Bank, N.A.*, 318 Pa. Super. 90, (Pa. Super. 1983).

Here, NASIC, which as the surety for Nolt, and Umoja, both claim that they are not required to pay RCC because RCC's scheduling issues may result in damages to Nolt and RCC. Yet, neither party has produced any evidence in discovery relating to the extent as to the delays, which caused the delays and the amount of damages relating to any such delays. Defendants produced no expert report or engineering or other reliable analysis or evidence of the extent and cause of any delays or the amount of damages caused by any such delays. It was only RCC who provided an expert opinion, which Defendants have not rebutted.

Given the Defendants' failure to produce during discovery an expert report or engineering or other reliable analysis or evidence of the extent and cause of any delays or the amount of damages caused by any alleged delays caused by RCC, they should not be allowed to introduce any evidence at trial that RCC allegedly contributed to any scheduling issues.

Further, there is no dispute that Umoja was contractually responsible for verifying the field dimensions of the materials that RCC was to fabricate in accordance with the RCC Subcontract and thus, any scheduling delays caused by Umoja's failures to verify the field dimensions are not attributable to RCC.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff RCC Fabricators, Inc. respectfully requests that the Court enter an Order precluding Defendants from introducing at trial any evidence of scheduling issues allegedly caused by RCC Fabricators, Inc.

9

5863502-1

|  |  |
|---|---|
|  | **CONNELL FOLEY LLP**<br>457 Haddonfield Road – Suite 230<br>Cherry Hill, NJ 08002<br>Ph: (856) 317-7100<br>e-mail: phughes@connellfoley.com<br>ltrembly@connellfoley.com |
| DATE: March 30, 2021 | By: _s/ Patrick J. Hughes_<br>Patrick J. Hughes<br>Lisa J. Trembly<br><br>*Counsel for Plaintiff, RCC Fabricators, Inc.* |

10

## CERTIFICATE OF SERVICE

I, Patrick J. Hughes, hereby certify that on March 30, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's Electronic Case Filing ("ECF") system. I further certify that, on this date, the foregoing was served upon all parties via transmission of a Notice of Electronic Filing generated by ECF. I further certify that all parties to this action are represented by counsel of record who are registered users of ECF that have consented to receive electronic service.

By: /s/ *Patrick J. Hughes*
Patrick J. Hughes
CONNELL FOLEY LLP
457 Haddonfield Road – Suite 230
Cherry Hill, NJ 08002
Ph: (856) 317-7100
e-mail: phughes@connellfoley.com

*Counsel for Plaintiff,*
*RCC Fabricators, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RCC FABRICATORS, INC.<br><br>    Plaintiff<br><br>vs.<br><br>UMOJA ERECTORS LLC and NORTH AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>    Defendants | CIVIL ACTION NO. 2:17-cv-05304-TR |

**CERTIFICATION OF PATRICK J. HUGHES IN SUPPORT OF RCC FABRICATORS, INC.'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF ANY SCHEDULING DELAYS ALLEGEDLY CAUSED BY RCC FABRICATORS, INC.**

I, Patrick J. Hughes, being of full age do hereby certify as follows:

1. I am a partner with the firm of Connell Foley LLP, attorneys for Plaintiff RCC Fabricators, Inc. ("RCC"), in connection with the above-captioned action.

2. I submit this Certification in support of RCC's motion in limine to preclude evidence of any scheduling issues allegedly caused by RCC.

3. Attached as "Exhibit A" to this certification is a true and correct copy of the General Contractor Agreement between non-party D.A. Nolt, Inc. ("Nolt") and non-party the Philadelphia Municipal Authority ("the PMA") for work in connection the "Public Safety Services Campus - Building Facade and Roof Improvement Project," Project No. 11-13-4108-01 (the "Project").

1

5855951-1

4. Attached as "Exhibit B" to this certification is a true and correct copy of the payment bond between Nolt and Defendant North American Specialty Insurance Company ("NASIC") (Bond No. 2195249) in the amount of $14,821,198.72.

5. Attached as "Exhibit C" to this certification is a true and correct copy of the Prime Subcontract between Nolt and Defendant Umoja Erectors LLC ("Umoja").

6. Attached as "Exhibit D" to this certification is a true and correct copy of the RCC Subcontract between RCC and Umoja.

7. Attached as "Exhibit E" to this certification are true and correct copies of RCC's invoices to Umoja in connection with the RCC Subcontract.

8. Attached as "Exhibit F" to this certification is a true and correct copy of RCC's letter to Nolt dated March 17, 2017, wherein RCC asserted a claim against the Bond.

9. Attached as "Exhibit G" to this certification are true and correct copies of excerpts of the transcript of the Deposition of Alburn Brown that took place on January 30, 2019.

10. Attached as "Exhibit H" to this certification is a true and correct copy of RCC's RFIs requesting field verification of dimensions.

11. Attached as "Exhibit I" to this certification are true and correct copies of the September 2016 email e-mail string between Alburn Brown and employees of Nolt and RCC.

12. Attached as "Exhibit J" to this certification is a true and correct copy of the Expert Report of Jesse R. Sloane, P.E. dated May 31, 2019

13. Attached as "Exhibit K" are true and correct copies of RCC's RFIs relating to steel it delivered that could not be used as intended due to existing field conditions.

5855951-1

14. Attached as "Exhibit L" to this certification are true and correct copies of RFI responses from the City of Philadelphia.

15. Attached as "Exhibit M" to this certification is a true and correct copy of meeting minutes dated March 24, 2017.

16. Attached as "Exhibit N" to this certification are true and correct copies of excerpts of the transcript of the Deposition of Charles Knauff that took place on January 11, 2019.

17. Attached as "Exhibit O" to this certification is a true and correct copy of RCC's Bills of Lading in connection with the RCC Subcontract.

18. Attached as "Exhibit P" to this certification is a true and correct copy of excerpts of the transcript of the Deposition Alburn Brown that took place on January 20, 2019.

19. Attached as "Exhibit Q" to this certification is a true and correct copy of excerpts of the transcript of the Deposition of Kevin Lumpkin that took place on January 30, 2019.

20. Attached as "Exhibit R" to this certification is a true and correct copy of the February 10, 2017 letter from Nolt to Umoja.

21. Attached as "Exhibit S" to this certification is a true and correct copy of a Spreadsheet showing payments paid by Nolt to Umoja.

22. Attached as "Exhibit T" to this certification is a true and correct copy of Order issued by the Honorable Gene E.K. Pratter, U.S.D.J., dated May 28, 2020.

Pursuant to 28 U.S.C. § 1746(1), I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                            **CONNELL FOLEY LLP**

By:   /s/ *Patrick J. Hughes*
       Patrick J. Hughes (I.D. No. 41403)
       457 Haddonfield Road – Suite 230
       Cherry Hill, NJ 08002
       Ph: 856-317-7100
       e-mail: phughes@connellfoley.com

       *Counsel for Plaintiff, RCC Fabricators, Inc.*

Dated: March 30, 2021